ADOLPHUS SCHWERIN et al., Respondents, v. WILLIAM A.
McKIE et al., Appellants.

The provision of the act of congress of 1852, extending the warehouse
system, etc. (10 U. S. Statutes at Large, 270), which provides that goods
deposited in a private bonded warehouse, authorized by that act, shall
be at the exclusive risk of the owner or importer, was intended solely for
the benefit of government, and does not relieve the warehouse keeper
from the duty of exercising ordinary care and prudence, nor from the
liabilities of other warehousemen to their patrons.

The failure of a bonded warehouseman to deliver, upon demand, goods
deposited with him, upon which the duties have been paid, casts upon
him the burden of accounting for them.

Defendants, keepers of a bonded warehouse, in an action against them for the
non-delivery of goods deposited, gave evidence tending to show that their
warehouse was broken open and the goods removed by burglars, and
that they had used such precautions as ordinary prudence would dictate to
protect their warehouse from burglars. The court charged the jury in
substance that the evidence must be such that from it they could fairly
assume that the goods were lost by means of the burglary. *Held*, no
error.

Interest upon the value of goods, from the time of demand and refusal to
deliver, is a proper item of damages in an action against a warehouse-
man.

(Argued May 14, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the
Superior Court of the city and county of New York, affirm-
ing judgment in favor of plaintiffs entered upon verdict.
(Reported below, 5 Robt., 404.)

This action was brought against defendants as warehouse-
men for the refusal to deliver goods deposited with them.

In April, 1864, the defendants were keepers of a warehouse
in the city of New York, known as a private bonded ware-
house, established under an act of congress "to extend the
warehousing system by establishing private warehouses and
for other purposes," passed March 28th, 1854. Plaintiff
deposited, in April, 1864, on storage with the defendants, a
their warehouse, a quantity of cigars, subject to the lien of
the United States government for duties, which duties wer

afterward paid by the plaintiffs, and the cigars discharged of all lien therefor; that all of them, except fifty-two boxes, were subsequently delivered to and removed by the plaintiffs, who demanded the remaining fifty-two boxes of the defendants, who did not deliver them. When the plaintiffs rested, defendants moved for a nonsuit, upon the grounds, first, that the plaintiffs had not shown negligence on the part of the defendants; second, that, by the laws of the United States, the storehouse keeper and the proprietor of the United States bonded warehouse are made joint custodians of the goods stored, and, hence, an action would not lie against the latter; third, because, by the laws of the United States, all goods placed in a United States bonded warehouse are declared to be at the risk and expense of the owner, importer or consignor.

The motion was denied, and the defendants excepted.

The defendants gave evidence tending to show that this building was in all respects a first class warehouse, as good as any other in use; that the cigars in question were removed therefrom by burglars, who entered through what the evidence also tended to prove was a well constructed scuttle, well fastened by an iron bar, hasps, staples and padlocks on the inside. When the evidence closed the defendants' counsel asked the court to charge the several propositions theretofore stated as grounds for a nonsuit, and the following:

" 1st. That the defendants are not liable in this action to the plaintiffs, if the goods in question were lost or destroyed otherwise than by the gross negligence of the defendants, their agents or servants.

" 2d. That if the goods were stolen by burglars breaking into the store at night, through the scuttle, after it was closed for the night, the defendants were not responsible.

" 3d. That if the storehouse in question was secured in all respects, and watched as well as stores of this description usually are, notwithstanding the goods were stolen from the store by persons other than the defendants or their agents or servants, the defendants are not liable.

"4th. That if the goods in question were stolen by burglars breaking into the store through the scuttle at night, after the store had been closed for the night, and the scuttle at the time of such burglary was well and strongly secured, as the best secured scuttles of similar warehouses in the city of New York and the adjacent cities of Brooklyn, Jersey City and Hoboken were then secured by prudent proprietors of such warehouses, the defendants are not liable to the plaintiffs in this action.

"5th. If the goods were stolen by burglars entering through the scuttle at night, ordinary care on the part of the defendants did not require that they should ascertain before the burglary the best known method of securing the scuttle against burglars, and securing it in that way.

"6th. The degree of care required to be exercised by a railroad company, in providing the most approved and best known inventions to prevent accidents to passengers, is greater than that required of these defendants in providing fastenings or inventions to prevent burglars from entering their store."

The court, in response to each of these several requests, declined to charge as requested, and to his refusal defendants excepted. The court then charged the jury that a bonded warehouse keeper was liable for negligence the same as any ordinary warehouseman; and if the defendants did not do what any ordinary warehouse keeper should do, they were liable.

That in determining the means used in protecting goods stored against loss, they were not to occupy their time in endeavoring to find out in what form the highest exertion of the most acute intellect and experience would render a man to devise means to protect goods in a warehouse against danger, but to determine what a man would do in the exercise of ordinary prudence to protect his property.

They must be careful not to say at once, "such and such things ought to have been done," because they were suggested or then suggested themselves to them, but reflect what a merely ordinary prudent man would do in taking charge of

property of this kind, and therefore to determine "whether this warehouse was put in proper condition such as a prudent man taking care of his own goods in his own warehouse would have put it, who guarded and cared for his own property." "If there is extra precaution that a prudent man would use as to fastenings or as to the use of fence, watch-dogs or private watchmen outside, it was for them to say whether these were such things as a prudent man would use in ordinary cases, and whether the want of such safeguards was the cause of the abstraction of the goods."

The court then stated that the defendants had undertaken to prove that there was an act immediately connected with the loss of the goods. That on the 14th June the scuttle of the warehouse was raised by the application of great violence, and thereby afforded means for some one to descend into the building. That they had proofs of an investigation being made into the state of the scuttle ; that it was for them to say whether the goods were taken otherwise than by somebody through the scuttle ; whether any one descended from that scuttle, picked up the cigars and took them off, was for the jury to decide, as much as if the party charged with having thus carried them off was on trial for burglary ; it was for them to say whether there was evidence to show that a burglary had been committed. "In other words," it was for them to determine, under the testimony, with such light as was thrown upon it by the counsel, whether they could fairly assume that any person entered at that time with burglarious intent and caused the loss of the cigars ; and if they should "find that although these cigars were delivered to the defendants and that they have not accounted for their loss, they exercised ordinary care on their part, or the loss occurred without negligence by them," they should find a verdict for the defendants ; otherwise, they should find for the plaintiffs the value of the cigars, with interest from the time the plaintiffs demanded them.

The defendants excepted to so much of the charge as instructed the jury that the defendants as warehouse keepers

were liable for negligence; to so much as instructed them that the warehouse keeper was liable if he did not do what an ordinary storehouse keeper ought to do in taking charge of the goods in his charge; to so much "as required the jury to decide whether the cigars were lost by some one descending through the scuttle and carrying them off, the same as if the party who took them was on trial for burglary; and to so much as required them, if they found the defendants liable, to render a verdict for principal and interest." The jury rendered a verdict in favor of the plaintiffs for $1,543.35, for which sum, with costs, judgment was entered.

*John C. Dimmick*, for the appellants. Goods in a bonded warehouse are at the sole and exclusive risk of the owner or consignee. (*Schmidt* v. *Blood*, 9 Wend., 268; 2 Kent's Com., marg. p., 566; 1 Pars. on Cont., 622, and cases cited; 10 U. S. Stat. at Large, 270, chap. 30, §§ 1, 3, 8; 12 id., 560, chap. 163, § 21.) Where there is a partial loss of the goods, the *onus probandi* as to negligence is upon plaintiff; in a total loss it is upon defendant. (*Schmidt* v. *Blood*, 9 Wend., 268; *Platt* v. *Hibbard*, 7 Cow., 500, note *a*; *Harris* v. *Packwood*, 3 Taunt., 264; *Marsh* v. *Hoyne*, 5 B. & C., 322; *Clay* v. *Willan*, 1 H. Bl, 298; Jones on Bail., 2d ed., 106, note 40.) This is an action in tort. It was error to allow interest on the value of the goods. (*Wilson* v. *Conine*, 2 J. R., 280; *Bissell* v. *Hopkins*, 4 Cow., 53; *Hyde* v. *Stone*, 7 Wend., 354.)

*Albert Mathews*, for the respondents. The burden of proof of the exercise of reasonable care and of accounting for the loss of the goods rests with defendants. (*Willard* v. *Bridges*, 4 Barb., 367; *Bush* v. *Miller*, 13 id., 489; *Platt* v. *Hibbard*, 7 Cow., 501; *Van Horn* v. *Kermet*, 4 E. D. Smith, 457; *Arent* v. *Squire*, 1 Daly, 501; *Newstadt* v. *Adams*, 5 Duer, 46; *Burnell* v. *N. Y. C. R. R. Co.*, 45 N. Y., 189; *Beardslee* v. *Richardson*, 11 Wend., 26; *Beekman* v. *Schouse*, 5 Rawle, 189; *Clark* v. *Spence*, 10 Watts, 337; *Alden* v. *Pearson*, 3 Gray, 348; *Logan* v. *Matthews*, 6 Penn. [Barr],

419; *Cox* v. *O'Reilly*, 4 Ind., 371; *Bennett* v. *O'Brien*, 37 Ill., 252; *Cummons* v. *Wood.*, 44 id., 416; *Parry* v. *Roberts*, 3 Adol. & Ellis, 118; 1 Smith's Lead. Cases, 6th ed., 416.) The fact that defendants were keepers of a private bonded warehouse, did not exempt them from liability for loss of the goods. (*Arent* v. *Squire*, 1 Daly, 349, *et seq.; Fox* v. *Pruden*, 3 id., 564; *Grinnell* v. *Olricks*, *MS.*, *N. Y. C. P.*, Nov. 25, 1865, BRADY, J.; Brightly's U. S. Digest, 488, §§ 296–299, 1222, § 58.) The United States government was under no obligation to the owner of the goods to exercise any care over them. (*Brissac* v. *Lawrence*, 2 Blackf., 121; *Nottram* v. *Heyer*, 1 Denio, 483; S. C., 5 id., 632; *Waldron* v. *Romaine*, 22 N. Y., 368; *Cartwright* v. *Wilmerding*, 24 id., 536; *Corble* v. *Maxwell*, 3 Blackf., 419.) The true measure of damages was the value of the goods at the time of the loss, and interest thereon to the time of the trial. (*Willard* v. *Bridges*, 4 Barb., 368; *Sherman* v. *Wells*, 28 id., 403; *Dana* v. *Fiedler*, 12 N. Y., 51; *Andrews* v. *Durant*, 18 id., 502.)

GRAY, C. Nearly all the questions presented in their varied forms upon the motion for a nonsuit and for refusing to comply with the defendants' request for instructions to the jury, as well as upon the exceptions taken, depend for solution upon the question whether by the act of congress passed March 28, 1854, vol. 10, U. S. Statutes at Large, 270, 271, abolishing the warehousing system by establishing private bonded warehouses, the plaintiffs' property, which was placed in the warehouse kept by the defendants, and which remained there after the lien thereon for government duties had been discharged, was then subject to the exclusive risk of the plaintiffs; or, in other words, whether the defendants, who were entitled to receive from the plaintiffs a compensation for their services as warehousemen, were, by that act, released from the exercise of that ordinary care which men of common prudence would have exercised under the same circumstances in taking care of their own property. The establishment of such warehouses was an experiment, on the part of the

government, for the benefit of those whose convenience or interest might be promoted by permitting their goods to remain in bond after the duties due to the government were paid; beyond the duties due to the government, it had no interest in the preservation of the property; all else belonged to the importer or owner, and the warehousemen who had a lien upon them for storage. The government were interested to see to it that in this new arrangement some security should be provided against its loss, which might accrue on account of any imports deposited in any warehouse authorized by that act, and hence it was provided that goods thus deposited should be at the exclusive risk of the owner or importer. In the prosperity of the warehouse keepers, who, like any other warehousemen, should undertake the enterprise for individual or private gain, the government had no special interest; and should not be understood to intend to relieve that class of persons from the perils of their enterprise by denying to those bound to pay them for their care the right to its exercise. The government was, in this arrangement, making a bargain, in its own behalf; it had no interest to interfere with or make any change in the obligations of bonded warehousemen to their patrons from the well-understood obligation of any other warehousemen to their patrons, and the presumption is that it did not, and that the risk provided for was for the exclusive benefit of the government.

When the plaintiffs gave evidence tending to show that the fifty-two boxes of cigars, deposited by them with the defendants, and upon which the duties had been paid, had not been delivered to them, and proved that they had demanded them of the defendants, who did not deliver them, it was quite unnecessary that they should have proved more. The failure of defendants to produce the cigars when demanded cast the onus of accounting for them upon the defendants. This was, in substance, the ruling in the court below. It has been referred to, approved and the principle established in *Burnell* v. *The N. Y. C. R. R. Co.* (45 N. Y., 184, 189). The numerous requests for instruction to the

jury, although a compliance with them was declined at the moment they were made, were afterward fully covered by the instructions, and complied with so far as a compliance was proper. Whether the storehouse in question was, in all respects, secured and watched as well as stores of the same description usually were, or whether they were as strongly secured in the respects mentioned as similar warehouses in Brooklyn, Jersey City and Hoboken, did not establish the fact that goods in them were housed and protected as a man of ordinary prudence would, under the circumstances, have protected his own property. If the warehouse was as perfect and as well guarded as the dictates of common prudence would, under the circumstances, have suggested, and the defendants' goods were, notwithstanding, abstracted therefrom by burglars, it was entirely proper that the judge should, as he in substance did, instruct the jury that the evidence must be such that from it they could fairly assume that the goods were lost by that means.

The request to charge that the degree of care required to be exercised by a railroad company in providing the best known inventions to prevent accidents to passengers was greater than was required by the defendants in providing fastenings and inventions to prevent burglars from entering the store, was well disposed of by instructing the jury that if the defendants exercised ordinary care, and the loss occurred without their negligence, their verdict should be for the defendants.

The cigars in question were the property of the plaintiffs, and when they demanded them they were entitled to one of three things: To the goods; the pay for them, or a valid excuse for not delivering them. The defendants have failed to do either; and, having thus occasioned the plaintiffs the loss of interest upon the value of their property without a valid excuse, they cannot justly complain of being charged with interest.

The judgment should be affirmed.

EARL, C. (dissenting). I am satisfied, notwithstanding the laws of the United States in reference to bonded warehouses, that the defendants are to be held to the liabilities and responsibilities of ordinary warehousemen, and yet I cannot concur with my brethren in the affirmance of the judgment below.

As warehousemen the defendants were charged with the duty of keeping the property intrusted to them with ordinary care. I think the undisputed evidence shows that they did this.

I think the court erred in refusing to charge the sixth request, as follows: "If the goods were stolen by burglars breaking into the store at night, through the scuttle, after it was closed for the night, the defendants are not responsible." This request was based upon the evidence, and there was nothing in the case calling for its qualification; and it cannot well be claimed that it was, substantially, contained in the charge as made. The evidence showed that the store was properly constructed, and there was no want of ordinary care and prudence in its management. It seems to me that the defendants took extraordinary care to secure the safety of the goods intrusted to them Hence the unqualified charge should have been given as requested.

The court also erred in refusing to charge the eleventh request, as follows: "If the goods were stolen by burglars entering through the scuttle at night, ordinary care on the part of these defendants did not require that they should ascertain, before the burglary, the best known methods of securing the scuttle against burglars, and securing it in that way." There is nothing in the charge as made covering this request.

Upon these grounds, without stating my reasons in full, I am for reversal of the judgment and a new trial.

All concur for affirmance, except EARL, C., dissenting.

Judgment affirmed.