# NEW YORK SUPREME COURT.

ROBERT L. CUTTING, Jr., as receiver of the Bankers and Brokers' Association, agt. THOMAS S. MARLOR.

*Bailment — Negligence of a banking corporation — when liable for the wrongful conversion by its president of the property of a depositor.*

Absence of all supervision and care on the part of bailees, with respect to the subject of the bailment, is, of itself, such negligence as to render them liable for its loss through the wrongful acts of their agents.

A banking corporation is under a duty to adopt rules and regulations and so to conduct its business as that the property intrusted to its safe-keep-

ing shall be reasonably protected against misapplication by its servants and agents. An omission to adopt and enforce prudent rules in this regard is a failure of duty towards its dealers and is blamable negligence.

*Special Term, January,* 1879.

*Gray & Davenport* and *John McKeon,* for plaintiff.

*William Henry Arnoux,* for defendant.

VAN VORST, *J.*— The plaintiff, who is the receiver of the Bankers and Brokers' Association, seeks to recover from the defendant in this action the sum of $6,000, loaned to him by the association.

The defendant admits the loan, but the evidence adduced on his behalf shows that he deposited with the association, as collateral security for the loans, twelve bonds of the Wabash Railway Company of the par value of $1,000 each, and fifty shares of the stock of the Metropolitan Bank of the par value of $100 each; that, before the commencement of this action, he tendered to the plaintiff the principal and interest of the loans and demanded the return of his stock and bonds, and the plaintiff replied that he was unable to return the same. The facts in regard to the stock and bonds are, that Bonner, the president of the Bankers and Brokers' Association, had taken and converted the same to his own use. He had pledged them, together with other property, to bankers and others as security for loans made to himself, and they were lost thereby, as well to the Bankers and Brokers' Association as to the defendant.

The question arises, under these circumstances, can the plaintiff recover the amount of these loans to the defendant? and this involves a determination of the principal subject litigated, as to whether the Bankers and Brokers' Association is liable for the tortious act of its president with respect to defendant's stock and bonds. The plaintiff's counsel claim

that they are not so liable, and that the defendant must pay the loans, although his securities are lost to him, through the wrongful act of Bonner.

If that be so, the entire loss falls upon the defendant, although it was occasioned by no act or omission of his own, and the association will sustain no damage through the act of its president.

In support of this view, the plaintiff's counsel contend, that the Bankers and Brokers' Association were mere bailees, and liable only for ordinary care; that they are not responsible for the fraud or felony of Bonner, unless bad faith be shown against them, or such negligence, as amounts to fraud. Numerous cases are cited by the counsel, in which bailees, with whom property was left on deposit, have not been held liable for the loss of the subject of the bailment, through thefts of their agents, servants and employes.

It is claimed that this immunity extends to banking corporations, and that they are not liable for securities held as collateral for the payment of notes discounted by the bank, and which have been stolen without negligence on the part of the bank itself. Some of the cases cited are of gratuitous bailments, others for hire (*Foster* agt. *Essex Bank*, 17 *Mass.*, 479; *Jenkins* agt. *Nat. V. Bank*, 58 *Maine*, 275; *First Nat. Bank of Lyons* agt. *Ocean Nat. Bank*, 60 *N. Y.*, 279; *Giblin* agt. *McMullin*, *L. R.*, 2 *P. C. Cases*, 318; *First Nat. Bank* agt. *Boyd*, 44 *Maryland*, 47; *Schwerin* agt. *McKee*, 51 *N. Y.*, 180).

I do not deem it important to enter into a close analysis of these cases. The general principle upon which they rest is, that of bailments of the nature of the one under consideration, in order to charge the bailee for loss occasioned by the tortious act of its officers or agents, there must have been negligence on the part of the bailee.

Absence of all supervision and care, on the part of the bailees, with respect to the subject of this bailment, would of itself be such negligence as to render them liable.

The Bankers and Brokers' Association was a corporation, and was authorized, among other things, to receive stocks and bonds on deposit, and to make loans on the same. They were entitled to charge commissions for all services other than the loaning of money.

The management of the concerns of the corporation was, by its charter, committed to a board of trustees who were authorized to make by-laws directing its affairs and for carrying out its objects. The board of trustees consisted of thirteen persons, which, by the by-laws, was to meet on the first Friday of each month. Now, to advert more particularly to the defendant's stock and bonds, held as collateral security for the loans, and which in value were largely in excess thereof, it appears that the president of the association, Bonner, either personally took them from the office of the bank or that they were delivered to his messenger at his request. He left nothing in place of them. Mr. Oley was the ostensible manager of the affairs of the association, and had the nominal charge of its property and securities. But Bonner, who was a broker and a large borrower of money, was accustomed to take its securities to his own office, and use them without apparent let or hindrance. His habit was to visit the office of the association whenever it pleased him, and inquire of the officer in charge what securities they had, and take them. This practice prevailed largely for a period of six months before he finally failed and absconded. In this way, with other illegal practices, he despoiled the corporation of its property and wasted its capital.

Mr. Oley, the manager in charge, did not consent to his taking the securities. He made objection, but he could not resist Bonner, who was his superior officer, nor prevent his taking the property.

The defendant's stock and bonds were taken by Bonner in this way: No entry was made on the books of the corporation of the delivery of this property to its president; but, in the books of Bonner's firm, the stocks taken from the associa-

tion, were entered in a loan account. Whenever Mr. Oley wanted a return of stock or bonds taken by, or delivered to, Bonner, he would send over for them and they would be returned.

I conclude that a system of management of a banking house in which such conduct of its officers was permitted was a breach of duty and grossly negligent towards its dealers and persons having stocks and bonds in its keeping.

It does not appear that the trustees took any substantial oversight of the affairs of the association, or devised any measures for the safe custody of its property. The trustees did not hold meetings, as provided in the by-laws. If summoned to attend they did not appear. No periodical examination of the securities, to ascertain what were on hand, or how secured, appears to have been made by any committee. The association had a safe, but the securities were not lodged in it. Ordinary circumspection and safeguards were not interposed for the protection of the property of the association or of its depositors and dealers, and Bonner's license to do as he chose, without accountability, seemed unlimited. The legitimate outcome of such license was ruin to Bonner and the association, and loss to depositors and stockholders.

It is urged, in behalf of the associates of Bonner, in justification of the confidence and power reposed in him, that he was, up to his failure, a man of good character.

But it should not be allowed to any man, however good he may seem, to be tempted with power and property in this way. The stock and property of the association, so readily acquired, was the ailment by which his appetite for speculation was fed and through which his ruin was probably hastened.

A banking corporation, with the powers and privileges of the one under consideration, is under a duty to adopt rules and regulations, and so to conduct its business as that property, intrusted to its safe-keeping, shall be reasonably protected against misapplication by its servants and agents. An omis-

sion to adopt and enforce prudent rules in this regard, is a failure of duty towards its dealers and is blamable negligence.

It is true that confidence must be reposed in some person who has the ultimate custody. But it can be only intrusted under reasonable regulations and safeguards, which involve examinations and circumspection on the part of the managers.

No such easy access to the securities, without accountability, as was indulged in Bonner, can be esteemed reasonable care. It would be a misnomer so to call it.

If his associate managers did not know of Bonner's control of the securities, they were bound to know it. They adopted no rules against it.

His practices in this regard had prevailed for a time sufficient to raise an implication of knowledge. It is said, in answer to the suggestion, that the securities should have been kept in the safe of the association, that Bonner, as president, would have been entitled to the safe combination, and could have as well taken the property from such place of deposit. It will be time enough to decide whether the association would be liable for the loss of bonds and stocks, feloniously taken from its safe, by an officer who had possessed himself of the means of opening it, when that case arises. Such question is not now involved.

The conclusion reached is, that the association is liable for the act of Bonner in converting the defendant's bond and stock, and that the defendant should recover the value thereof in this action out of any assets of the corporation in the hands of the plaintiff, less the amount of the loans made to defendant.