(31 App. Div. 33.)

### LICHTENSTEIN et al. v. JARVIS et al.

(Supreme Court, Appellate Division, First Department. June 24, 1898.)

1. WAREHOUSEMAN—FAILURE TO DELIVER.
   In order that a bonded warehouseman may excuse himself for failure to deliver property intrusted to him, he must show that it has been lost without any fault or negligence upon his part; and for this purpose mere evidence that the property has disappeared is insufficient.

2. SAME—ACTION TO RECOVER VALUE—EVIDENCE.
   As, under such circumstances, in an action to recover the value of the property, there is no question to go to the jury, error in excluding evidence for the defendant as to how its warehouse compared in respect of security with other bonded warehouses in the same city, and in admitting plaintiff's evidence of the erroneous delivery of other goods from defendant's warehouse after the loss in question, is not prejudicial to the defendant.

3. SAME—OBJECTIONS TO DEMAND.
   In such an action an objection to the sufficiency of the plaintiff's demand for the goods, on the ground that, when it was made, he had not paid the government duties, and was therefore not entitled to immediate possession, cannot be raised unless it was made at the time of the demand, for, if made then, it might have been obviated.

4. SAME—DUTIES.
   The fact that a bonded warehouseman comes as such into the possession of goods, in the conduct of that business, to hold for the owner and the government, raises an obligation upon his part for their safe storage, and establishes the relation as between him and the owner.

Appeal from trial term, New York county.

Action by Julius Lichtenstein and another against Robert M. Jarvis and another. From a judgment entered on the verdict, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and INGRAHAM, JJ.

W. J. Townsend, for appellants.

A. Kling, for respondents.

VAN BRUNT, P. J. This action was brought to recover the value of nine bales of tobacco, the property of the plaintiffs, stored in the bonded warehouse of the defendants. The complaint alleges the co-partnership of the plaintiffs; that the defendants conducted and carried on a public warehouse in the city of New York; that the plaintiffs were the owners of the tobacco in question, and entered into an agreement with the defendants by which the defendants agreed to safely keep and store for the plaintiffs the tobacco, and to

return the same to the plaintiffs upon demand; that the plaintiffs duly demanded of the defendants a return of the said tobacco; and that the defendants failed and refused to return the same. The answer of the defendants denied any knowledge as to the co-partnership of the plaintiffs; admitted that they were engaged in the business of keeping a warehouse; denied, upon information and belief, the ownership of the plaintiffs in the tobacco in question; and, also upon information and belief, denied that the plaintiffs entered into an agreement with the defendants by which the latter agreed to safely keep and store for the defendants the said tobacco. The answer further alleged, as a separate and distinct defense, that their warehouse was a bonded warehouse; that they received large quantities of merchandise from time to time, imported from foreign countries into the United States, at the port of New York, which had been entered in bond, and directed by the clerk of customs of said port to be stored in said bonded premises of the defendants, as security for the payment of the customs duties due the United States government thereon, but that they had no knowledge or information sufficient to form a belief as to whether any of such merchandise was owned by the plaintiffs. The answer further alleged that, if any of the plaintiffs' merchandise was deposited within their bonded warehouse, such merchandise was so deposited or stored at the sole risk and expense of said plaintiffs. The answer further denied that the plaintiffs have sustained any loss or damage by reason of the action of the defendants or of the failure of action by the defendants.

Upon the trial, the plaintiff proved the ownership of several hundred bales of leaf tobacco stored in said warehouse in 1893, and that on the 3d of January, 1894, it was discovered that nine bales of the plaintiffs' tobacco were missing, to recover the value of which this action was brought. The defendants' warehouse was in the custody and control of the government, as well as of the defendants. Each door was secured by two locks, one known as the "government lock," the key of which was retained by the government's storekeeper, and the other known as the "warehouseman's lock," the key of which was in the possession of the warehouseman. The warehouse could not be properly opened except upon the joint action of the government's storekeeper and the warehouseman. On Saturday, December 31, 1893, the warehouse was locked as usual. There is no evidence that the nine bales were seen in the warehouse of the defendant later than early in December, 1893. It is true that Richard F. Carr, who was the storekeeper of the government, testified that he knew the bales were there on the 30th of December, 1893, but upon further examination he testified:

"I did not take an inventory between the 1st of August and the 30th of December, and had no reason to look to see whether these nine bales were there between the 1st of August and the 30th of December."

He further testified that his attention was never called to them from the time they got in there until the 3d of January, and that he had no knowledge from personal observation of their being there on the 31st day of December, further than that they could not be delivered until he delivered them.

A witness named Ferry, who was the superintendent of the business of the defendants, testified that he made an inventory of this tobacco between the time when it was brought into the warehouse and the 3d of January, 1894; that it was about the end of November or the first of December, and that the nine bales were there then. On Tuesday morning, January 3, 1894, it was found that the government lock was missing from the cellar door of the warehouse; that the warehouseman's lock was in position, but was bruised and battered, and it could not be unlocked with its key, but was finally opened by a locksmith, with tools. There was no evidence whatever that the cellar had been entered. None of the paint or woodwork about the door was marred, and the defendants' superintendent himself states that he did not know at that time that there was any evidence of robbery. It further appeared that, out of 200 bales of tobacco which were in the cellar, these 9 bales of the plaintiffs were the only ones that disappeared; and the fact that these had disappeared was not ascertained until an inventory of the tobacco which ought to have been in the cellar was taken, and these bales were not found. The tobacco in question was not in the front of the cellar, but a considerable quantity of other tobacco was in front of it the last time it was seen. It appears from the evidence of the witness Ferry that there were aisles leading through this cellar, and that bales of tobacco were placed on both sides, and that there was no disturbance in these aisles when he went there on the 3d of January, and that everything was apparently in its place.

Upon this state of facts, the jury rendered a verdict in favor of the plaintiffs, and a motion was made for a new trial, which was denied, and from the judgment and order this appeal is taken. The grounds which are urged in support of this appeal are—First, that the tobacco was stolen from the defendants' warehouse without their fault, and that the plaintiffs failed to prove negligence; second, that the cause of action alleged in the complaint was unproven; third, that no legal demand was made for the return of the tobacco; and, fourth, upon exceptions taken to the reception and rejection of evidence.

If there was any question to go to the jury as to the loss of the goods, then, undoubtedly, error was committed in the reception and rejection of evidence. The defendants sought to introduce evidence as to how this bonded warehouse compared as to its security with other bonded warehouses of the city of New York. This evidence was excluded, and we think erroneously. The case of Claflin v. Meyer, 75 N. Y. 260, expressly recognizes the legitimacy of evidence of this description.

Then, again, evidence was introduced by the plaintiffs to the effect that, after the loss of the tobacco in question, other tobacco had been erroneously delivered from this warehouse. This evidence was clearly improper. The negligence of the defendants in other cases did not justify the plaintiffs in a recovery in the case at bar. These errors were, however, in no way prejudicial to the defendants, unless there was some question to go to the jury. An examination of this evidence shows that there was nothing to go to the jury. There was no dispute as to the facts. There was nothing in the evidence

to indicate that the defendants' premises had been robbed.   The only indication of robbery, and the ground upon which robbery is claimed, is that the plaintiffs' tobacco was missing.   That is clearly insufficient.   The premises remained locked.   There were watchmen guarding the warehouse.   There was no evidence of the doors having been forced or the warehouse having been entered.   There was some attempt to prove that the premises were in disorder on the morning of the 3d of January; but the evidence of the superintendent of the defendants was that there was nothing unusual about them when he entered on that morning.   In order that a bailee may excuse himself for failure to deliver property, he must show that it has been lost without any fault or negligence upon his part.   The evidence in this case shows nothing except that the tobacco was gone.   This was clearly insufficient.

It was further urged that, the plaintiffs not being entitled to the immediate possession of the property, because they had not paid the duties, and had no permits at the time they made the demand, no recovery could be had.   It is sufficient to say that no such objection was raised at the time of the demand, nor at any time.   If it had been made at time of demand, the plaintiffs could have obviated such objection by paying the duties, and obtaining a permit for the delivery of the property.   But, as already said, no such objection was made at that time by the defendants.   Their answer was that they had not the tobacco; and it is too late after suit is brought for them to raise the technical objection that the plaintiffs had not paid the duty, and therefore were not entitled to the immediate possession of the tobacco.   The warehouseman placed his refusal upon one ground; and, after suit brought, he cannot be allowed to change his position as to a point which might have been remedied at the time if he had called attention to it.

It is further urged that there was no agreement upon the part of the defendants to safely store these goods.   The evidence shows that they were engaged in the warehouse business, and that, in the conduct of that business, they came into the possession of these goods as bonded warehousemen, to hold for the owner and the government. This raised an obligation upon the part of the defendants, and established the relation between them and the plaintiffs.

The defendants having utterly failed to excuse themselves for the nondelivery of the tobacco, all the questions of evidence which have been criticised were entirely immaterial; and even if the rulings were incorrect, as heretofore stated, the defendants have suffered no injury therefrom.   Notwithstanding the repeated assertions of the defendants' counsel in their argument upon this appeal that the tobacco was proved beyond question to have been stolen from the warehouse, we have searched the record in vain to find the slightest evidence that these premises were entered by anybody between the time when they were closed on Saturday night, December 31st, and the time when they were opened on the morning of Tuesday, the 3d of January.   It also appears from the evidence that the defendants' manager saw no appearance indicating that a robbery had been committed on that morning, and, indeed, seems only to have come to

that conclusion when it was found that these nine bales of tobacco which had been in the back of the cellar were missing, none of the other tobacco being disturbed.

The judgment and order should be affirmed, with costs. All concur.