GEORGE A. ARMSTRONG, Respondent, *v.* ANTONIO SISTI, Appellant.

Bailment — warehousemen — negligence — intoxicating liquors — pleading — complaint alleging breach of obligation implied or imposed by law upon defendant probably sufficient though it fails to allege express agreement with or obligation to plaintiff — no obligation to account for or to return property unless custody had been relinquished to claimed bailee — no bailment of intoxicating liquors seized by Federal officers and deposited in defendant's warehouse, the door of which was sealed and the key retained by the officers — insufficiency of evidence to warrant inference of negligence on the part of defendant through which liquors were lost, destroyed or stolen — quære whether legal damage is sustained or may be proven for deprivation of property which plaintiff may not legally hold, use or sell.

1. If a complaint alleges and the evidence shows breach of an obligation to plaintiff, implied or imposed by law because of the circumstances under which goods were deposited in the defendant's storeroom, it is probably sufficient though it fails to allege expressly agreement with, or obligation to the plaintiff. Obviously, however, there can be no obligation to account for or to return property to bailor, owner or third party unless custody of the property has been relinquished by its holder and intrusted to the person claimed to be a bailee.

2. Where, therefore, intoxicating liquors, belonging to plaintiff, had been seized by officers of the Federal government and deposited by them in defendant's bonded warehouse, the door of which was locked and sealed and the key retained by the government officers, there was no bailment, and defendant's obligation, if any, for the value of liquors removed from the warehouse during the period which elapsed before they were ordered to be returned to plaintiff, more than two years after seizure, must be based upon some element other than possession, custody or control relinquished by the holder to the defendant.

3. Assuming that the defendant was under some duty to exercise care, commensurate with the circumstances, to protect the room where the liquors were stored from entry without permission of government officers and to protect the contents from theft or

destruction, and that the circumstances of the case might be sufficient to make the defendant liable to the owner of the liquors if they were lost, destroyed or stolen through his negligence, where the government retained the sole right to enter the storeroom and to control the liquor in it and it fairly appears, or at least is a reasonable inference from the record, that the liquor was removed by government agents or by men clothed with appearance of government agents and admitted to the room with the approval, or because of the negligence of government officers who had the custody of the key to the room, no inference of negligence on the part of the defendant toward the government arises from the otherwise unexplained removal of the liquor, and since the plaintiff had not the custody of the goods and did not place them in the defendant's warehouse, defendant's obligation of care toward the plaintiff, if any, did not transcend the limits of his obligation to the government. The plaintiff, therefore, failed to make out a cause of action and the complaint should have been dismissed.

4. In any event the order for the return of the liquors to the plaintiff is an adjudication only that the search and seizure was unlawful and not that possession by the plaintiff is lawful. The evidence produced by the defendant shows conclusively that the plaintiff has no lawful right to hold or use the liquor and it may well be doubted whether legal damage is sustained or may be proven for deprivation of property which the plaintiff may not legally hold, use or sell.

*Armstrong* v. *Sisti,* 214 App. Div. 810, reversed.

(Argued April 2, 1926; decided May 4, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 8, 1925, affirming a judgment in favor of plaintiff entered upon a verdict.

*Clarence E. Williams* for appellant. The defendant owed the plaintiff no obligation whatever. Actual possession of the whisky to the exclusion of all others was absolutely essential to make out a bailment. (*Union Trust Co.* v. *Wilson,* 198 U. S. 30; *Garvey* v. *Union Trust Co.,* 29 App. Div. 518; *Van Wagoner* v. *Buckley,* 148 App. Div. 808; *Titsworth* v. *Winnegar,* 51 Barb. 156; *Trunick* v. *Smith,* 63 Penn. St. 18; Benjamin on Sales,

§ 174; *Drury* v. *Moors,* 171 Mass. 252; *Commercial Exchange Bank* v. *Blye,* 101 N. Y. 303; *Matter of Rogers,* 125 Fed. Rep. 169.) There was no contractual relation, either express or implied, between plaintiff and defendant and relation of bailor and bailee never existed. (*Hogan* v. *O'Brien,* 123 Misc. Rep. 865; *First Nat. Bank* v. *Ocean Nat. Bank,* 60 N. Y. 278; *Wechsler* v. *Picard Importing Co.,* 94 Misc. Rep. 157; 2 Black. Comm. 451; Story on Bailments, § 60; *Fletcher* v. *Ingram,* 46 Wis. 191; *Nicol* v. *C———,* 73 Ill. 348.)

*Fred J. Sisson* for respondent. The defendant was a bailee for hire of the goods and it was his duty to deliver the goods to the lawful owner upon demand or to give a satisfactory excuse for his failure so to deliver. (*Foulke* v. *N. Y. Cons. R. R. Co.,* 228 N. Y. 275; *Mullen* v. *Chickering,* 110 N. Y. 513; *Lichtenstein* v. *Jarvis,* 31 App. Div. 33; *Jones* v. *Morgan,* 90 N. Y. 4; *Schwerin* v. *McKie,* 51 N. Y. 180; *Herman* v. *New England Navigation Co.,* 143 App. Div. 551; *Wilson* v. *Chrystal,* 187 App. Div. 660.)

LEHMAN, J. On the evening of October 22, 1920, certain officers and agents of the United States government acting under a search warrant issued by a United States Commissioner, seized a large quantity of liquor and a still which they found on premises occupied by the plaintiff. The defendant was engaged in the importation and sale at wholesale of groceries and other commodities. In connection with this business he had established under government regulation a private " Customs Bonded Warehouse " in a small storeroom which was partitioned off from a larger room on defendant's premises. Access to this storeroom could be gained only through the defendant's premises and to that extent was controlled by the defendant. There was a sealed lock upon the door to the small storeroom used as a bonded warehouse

and the key to the lock was in the possession of United States officers. The defendant had neither means nor right to enter this small storeroom after it was locked. The morning after the liquors and still were seized and removed from plaintiff's premises, they were deposited in this small room. The door was locked and sealed and the key retained by the government officers. On December 23, 1922, more than two years after the seizure, an order was made adjudicating that this plaintiff was entitled to the return of the seized liquor on the ground that the search warrant and the seizure under the warrant were illegal. The order provided that " the fair value of the use of the storage warehouse of A. Sisti & Company for the storage of the said liquors is the sum of $45.00 per month " and adjudged that this plaintiff was liable for the payment of the " said storage " from the date of the seizure to the first day of July, 1922. When the storeroom was unlocked to permit the return of the liquors to the plaintiff it appeared that a large part of the liquors placed in the room was no longer there. The plaintiff has now recovered a judgment in the sum of $3,500 for damages which the jury has found he suffered from the loss of the liquors.

The complaint alleges that the officers and agents of the United States government placed the liquors in the defendant's warehouse and that the defendant agreed to " store and safely keep in his said warehouse the said personal property above described until the same should be called for by some one duly authorized to receive the said goods or until a court of competent jurisdiction should order that the said goods be returned to the plaintiff " and that the defendant failed to return the property on demand and did not safely keep and store the said personal property but the same was lost through the defendant's negligence in failing to take proper care thereof. The theory of the complaint and the theory upon which the case was submitted to the jury was that

the deposit of the liquors in the storeroom on defendant's premises might be regarded as a bailment and that the defendant could be held liable to the plaintiff as bailee or warehouseman of plaintiff's property for failure or refusal to deliver all the liquors deposited, unless he could establish a legal excuse for such refusal. Upon this appeal the defendant seeks to raise a number of interesting questions as to the correctness of various rulings at the trial and especially as to the correct measure of damages. Consideration of these questions becomes unnecessary if we decide that the plaintiff has failed to establish his cause of action.

The plaintiff has not pleaded or proved that *he* deposited the liquors in the defendant's warehouse. Concededly at the time that they were placed in the storeroom they were n the custody of the government officers. If the deposit constituted a bailment, it was a bailment by the government officers. If, as the complaint alleges, the defendant assumed by agreement the obligation to safely store and keep the property, the agreement was one made with the government officers and the complaint is entirely silent as to any agreement with the plaintiff. It is true that this court has said that " bailment does not necessarily and always, though generally, depend upon a contractual relation. It is the element of lawful possession, however created, and duty to account for the thing as the property of another, that creates the bailment, regardless of whether such possession is based on contract in the ordinary sense " (*Foulke* v. *N. Y. Consolidated R. R. Co.*, 228 N. Y. 269, 275), and if the complaint alleges and the evidence shows breach of an obligation to this plaintiff, implied or imposed by law because of the circumstances under which the goods were deposited in the defendant's storeroom, the complaint is probably sufficient though it fails to allege expressly agreement with or obligation to the plaintiff.

The circumstances which create a bailment may vary,

but obviously there can be no obligation to account for or to return property to bailor, owner or third party unless custody of the property has been relinquished by its holder and intrusted to the person claimed to be a bailee. Here, as we have pointed out, the liquor was seized by government officers; regardless of whether the seizure was legal or illegal, they had the custody of the seized property. Without an order from the court for its return the plaintiff could not obtain the property or control its disposition. The government officers placed the liquors in the defendant's storeroom but they retained the keys. The defendant could prevent others from entering the storeroom just as the owner of an apartment house can prevent others from entering a leased apartment and removing goods therefrom, but he himself could not enter the room and he could not admit others to it. He could not remove the goods from the room and he had no control of them while in the room. On the other hand, the government officers had right of access to the room though the defendant perhaps could by force exclude them; they could unlock the door and unless the defendant entered into a special agreement limiting their rights in this regard, they might remove the goods from the warehouse even against the defendant's protest. Ordinarily where goods are deposited in a United States bonded warehouse the depositor of the goods divests himself completely of the custody of the goods. Upon complying with the terms of the express or implied contract of storage and upon payment of the government charges, he is entitled to their return. Until their return he has no control of them. The provisions of the United States Revised Statutes, which regulate the manner in which such warehouses may be established and maintained, serve to limit the control of the warehouseman over the warehouse and its contents to the same extent as they create right of partial control in the United States government or its officers; but control and custody is completely

relinquished by the depositor and is completely assumed by the warehouseman subject only to the provisions of the statutes. These provisions may be read into the contract of storage but the obligations assumed by a bonded warehousekeeper to those who deposit goods in the warehouse are the same as those of any other warehousekeeper within the limits of control left by statute to the warehouseman. (*Claflin* v. *Meyer*, 75 N. Y. 260; *Macklin* v. *Frazier*, 9 Bush [Ky.], 3.) In the case now under consideration the plaintiff relinquished no custody when the goods were deposited in defendant's warehouse. They were then in the custody of the government officers. Custody of the goods by government officers was not relinquished subject to the provisions of the Revised Statutes in regard to bonded warehouses. It was retained by the government officers because they held the key to the room and could deal with the liquors as they chose. There may be a bailment when custody is relinquished even though placed in joint control of two instead of sole control of one; there can be no bailment when custody and control of property is retained by the holder though another party may have placed himself in a position which imposes upon him some obligation of care in regard to the property. The defendant may be under some obligation to use care to protect the contents of the room against theft or destruction. Whether such obligation exists we may consider hereafter, but in strict sense there has been no bailment here and the obligation if any must be based on some element other than possession, custody or control relinquished by the holder to the defendant.

It is urged that in the case of *Jones* v. *Morgan* (90 N. Y. 4) this court held that the keeper of a warehouse became the bailee of goods placed therein by an owner though the goods were placed in a separate room and at the owner's request a second lock was placed on the door and the key to that lock given to the owner. The circumstances in that case are not entirely analogous to

those now under consideration but it is not important that distinction be drawn here. Though the court there stated that the contract was one of bailment, the only question presented to the court was whether the plaintiff's goods were lost through negligence on the part of the warehousekeeper and the court pointed out that its decision upon that question would be the same whether the contract between the parties be regarded as one of bailment of goods or one for the hiring of a room. In either case the defendant was under obligation to use reasonable care to prevent unlawful entry into the room and theft of its contents and this obligation the defendant in that case failed to meet. Undoubtedly from the relationship of the parties, obligation on the part of the warehousekeeper, in important respects analogous to that of a bailee arose, so that for most purposes the relation might be regarded as one of bailment but it has been pointed out by legal writers that " the relation is not that of bailor and bailee in the full meaning of that relation." (Van Zile on Bailments & Carriers [2d ed.], section 196.) At least we may say that there is no obligation to keep the so-called bailor of the property from dealing with the room and its contents as he sees fit and no duty to account to the so-called bailor for goods placed in the room unless it appears that the goods were not removed by the bailor or other person to whom the bailor gave opportunity for access. Until inference is negatived that the goods may have been removed by the depositor or persons admitted to the room by him, burden of explaining the removal or loss of the goods may not be placed upon a warehousekeeper who may not even enter the room where the goods were placed.

We will assume that in the present case also the defendant was under some duty to exercise care, commensurate with the circumstances, to protect the room, where the liquors were stored, from entry without permission of government officers and to protect the contents from

theft or destruction. Question still remains whether such duty was owed to the plaintiff who did not hire the room or place the liquor therein and whether the evidence shows that the liquor was lost through the defendant's failure to carry out such duty.

We have already pointed out that contractual relation between the plaintiff and the defendant was not alleged or proven. The provision contained in the order for the return to the plaintiff of the seized liquor which directed the plaintiff to pay part of the value of the use of the ware-room for storage of the liquors was not an adjudication of contractual liability to the defendant. It was merely an adjudication that the plaintiff was bound to pay part of the expense for which the government of the United States was liable, in so far as that expense was increased by failure of the plaintiff to take timely proceedings to compel the return of the liquor to him. Though the plaintiff was not a party to the storage of the liquors in the wareroom, his son and his attorney were present when the liquors were placed there and joined in the conversation between the government officer and the defendant's representative. That conversation was more or less casual. It was clearly insufficient to sustain a finding of contract between the parties; but in that conversation the plaintiff's representatives gave notice of the plaintiff's interest in the liquor and its safe storage until adjudication could be had of the legality of its seizure and they received some measure of assurance that the wareroom was a safe place to store the liquor until lawfully removed. Perhaps that conversation, together with the other circumstances in the case, might be sufficient to make the defendant liable to the owner of the liquors if they were lost, destroyed or stolen through negligence of the defendant. We may assume, without now deciding, that this is true; nevertheless the obligation of care is primarily one which the defendant owed, not to the plaintiff, but to the United States government, whose agents placed

the liquors there.   The plaintiff could not interfere with the arrangements made by them; and the plaintiff knew that the defendant was under duty of care in regard to the liquors or the room where they were placed, only in so far as such duty was assumed by or imposed upon the defendant by the circumstances under which the liquors were placed in the storeroom.   If there is liability to the plaintiff it must be because of failure to carry out this duty.   Any duty to the plaintiff as owner was measured by the extent of the defendant's duty to the government which had custody and control of the liquors and placed them in defendant's premises.   The extent of that duty could be changed by agreement with the government or could be terminated at any time by removal of the liquors from the defendant's premises.

There is no evidence to show how the liquors were removed.   They were placed in the storeroom in October, 1920; a large quantity was no longer there in December, 1922.   Finding of negligence on the defendant's part can be based only on inference drawn from the circumstances.   If custody of the liquors to the exclusion of others had been in the defendant, unexplained failure to return the liquors would have given rise to such inference of negligence or wrong.   Here, however, the defendant could not enter the room because it was locked and sealed and the government officers did have access to the room.   If inference may properly be drawn from the evidence presented at the trial that the liquors were not withdrawn or removed by government officers or others who were able to enter the room because the government officers, by their own acts, gave them access to it, then it may be that inference of negligence on the part of the defendant or his servants might be drawn from failure to explain the disappearance of the liquors, for the storeroom was merely partitioned off from a larger room to which there could be no access without the knowledge

and acquiescence of defendant's servants. The testimony of the defendant shows that persons claiming to be officers of the government and wearing badges had come to defendant's place of business and asked to be admitted to the storeroom. They always brought with them the key to the storeroom and were admitted to the storeroom. Some of these men carried suit cases. Such men were allowed to enter the storeroom some thirty-five times. Though it is not entirely clear how these men carried away all the stolen liquor, yet it is fair inference that it was stolen by these men. No other persons were admitted to the room; no servant of the defendant had a key to the room and the lock on the door was apparently unbroken. There is no evidence that any boards of the partition of the room were broken. The plaintiff's son and attorney seem to have been satisfied at the time that the liquor was placed in the storeroom that the room itself was safe and that the liquors could not be removed unless entrance to the room was allowed to unauthorized persons. If the persons admitted to the room were in fact government officers or agents authorized to enter the room, the defendant was under no duty to see that they removed no liquor therefron. Government officers who placed the liquor in the storeroom had the key to the room. By their possession of the key they had the right and power to exclude others from the room. They also could secure entrance to the room for themselves or others and the defendant had no right to interfere with any disposition the government, through its officers or agents, chose to make of the liquor. It appears from the testimony of several government officers that at times they accompanied men whom they believed to be prohibition agents to the storeroom and unlocked the door for these men. They did not remain and watch what these men did, but on several occasions left the keys with them. On two or three occasions they left the keys with these men overnight. It may hardly be said that when

the government officers having the key to the storeroom, and through that key the control of the liquor in the room, chose to use the key to secure entrance for others whom they believed to be government agents, the defendant was under any duty to see that the men so admitted did not remove the contents of the room. The retention of the key was for the purpose of excluding persons not authorized by the government to enter the room and interfere with its contents and when the government officers unlocked the door or sent the key to unlock it in order to admit certain persons to it, any theft of the liquors by the persons so admitted was due to the act of the government officers in charge of the keys. The defendant assumed no duty to supervise the action of persons so admitted. It may be argued that upon the whole record the jury might have found that since the defendant allowed men to unlock and enter the storeroom about thirty-five times and since the evidence does not show that government officers unlocked the door or parted with the key as often, the defendant at times permitted the entrance to the room of men who had no authority from the government or right to use the key which they brought with them and that the liquor may have been removed at these unauthorized visits. That may be true, though to some extent it seems to rest upon conjecture rather than proof. Even if men were at times admitted without authority from government officers, the men admitted always had the key to the room. Since the key was in the possession of the government, it would seem that when these men brought a key it must have been given them by the officer who had charge of it or that the key was copied when it was left by government officers with unauthorized persons over night. In any case it is a fair and perhaps necessary inference that admission was obtained with the approval or because of negligent acts of government officers. Through that approval or because of that negligence

the persons who were allowed entrance to the room by the defendant were at least apparently clothed with authority to enter the room for purposes not disclosed to the defendant. It may hardly be said that the defendant was negligent towards the government in failing to watch these men or was bound to ask for further proof of authority.

Since the government retained the sole right to enter the storeroom and to control the liquor in it and it fairly appears, or at least is a reasonable inference from the record, that the liquor was removed by government agents or by men clothed with appearance of government agents and admitted to the room with the approval, or because of the negligence of government officers who had the custody of the key to the room, no inference of negligence on the part of the defendant toward the government arises from the otherwise unexplained removal of the liquor. Since the plaintiff had not the custody of the goods and did not place them in the defendant's warehouse, defendant's obligation of care toward the plaintiff, if any, did not transcend the limits of the defendant's obligation to the government. The plaintiff, therefore, failed to make out a cause of action and the complaint should have been dismissed.

Discussion of the other claims of error made by the plaintiff would serve no useful purpose. We should, however, point out that the order for the return of the liquors to the plaintiff is an adjudication only that the search and seizure was unlawful and not that possession by the plaintiff is lawful. The evidence produced by the defendant shows conclusively that the plaintiff has no lawful right to hold or use the liquor. It may well be doubted whether legal damage is sustained or may be proven for deprivation of property which the plaintiff may not legally hold, use or sell. Perhaps the point is not raised by exception. At present we merely point out the doubt so that no inference may be drawn from

reversal based on the ground that no negligence was proven, that we would sustain a judgment for substantial damage even if negligence had been shown.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN and CRANE, JJ., concur; ANDREWS, J., absent.

Judgments reversed, etc.