VEREINIGTE ALUMINIUM-WERKE AKTIENGESELLSCHAFT, Plaintiff, v. ATLANTIC TIDEWATER TERMINALS, Defendant.

Supreme Court, New York County, April 22, 1930.

*Reeves, Todd, Ely, Price & Beaty* [*David Cohen* of counsel], for the plaintiff.

*Davies, Auerbach & Cornell* [*William J. Carr* of counsel], for the defendant.

COLLINS, J. This action seeks to recover the value of a quantity of aluminum stored for the plaintiff with the defendant as a bonded warehouseman. The allegations of the complaint are admitted, and there is practically no dispute as to the salient facts. The controversy concerns the conclusions to be drawn from those facts and the law applicable thereto. On or about February 25, 1926, there was stored in the defendant's bonded warehouse, for safe-keeping, plaintiff's 1,690 bundles of aluminum, weighing in the aggregate 89,442 pounds; 1,449 bundles were returned; the remaining 241 bundles, the return of which plaintiff demanded on

or about March 8, 1928, were not produced, the defendant claiming that despite the exercise of due and reasonable care they were stolen between February 25, 1926, and May 24, 1927. It appears from the testimony of the United States customs storekeeper stationed at the defendant's warehouse that, while making the rounds a day or two after his return from his vacation in the middle of August, 1926, he found one of the padlocks on a gate which afforded access to the bonded area broken open. He made a superficial examination of the contents of the room wherein the aluminum was located, but did not make a count of the aluminum and did not discover any shortage. Indeed, the piles had not been disturbed, and apparently there was nothing out of order. It is this single episode — excepting of course the aluminum's disappearance — which constitutes the basis of the defense of theft. Seemingly this circumstance of the broken lock was not sufficiently impressive at the time of its occurrence or discovery to excite suspicion of a possible theft. The plaintiff was charged with storage for these 241 bundles for at least a part of the time it is now claimed they were stolen. About May, 1927, a count was made which for the first time disclosed the shortage. There appears to have been no connection, however, between the making of the count and the finding of the broken lock the previous August, the count being occasioned in May, 1927, by the appearance of the aluminum, and there was nothing else to indicate a shortage other than such appearance. The connection between the broken lock and the claimed theft is not apparent or convincing. When or how the shortage occurred does not appear. The shortage was not reported to the collector of customs until about April 6, 1928, about which time the plaintiff was notified thereof. It does not appear that the police were ever notified, and apparently no steps were taken to apprehend the offender or ascertain his identity. The defendant's testimony bears on the vigilance and care which it exerted in safeguarding the aluminum, and it contends that, because it has shown that it did all it was required to do, such showing, coupled with the incident of the broken lock, is sufficient to directly or inferentially establish a theft, and that, therefore, it is acquitted of responsibility.

The law is firmly fixed that a warehouseman is not an insurer of stored goods and is not liable for non-delivery to the owner if the cause therefor be a theft, and the warehouseman has exercised reasonable diligence to prevent the theft. (*Claflin* v. *Meyer*, 75 N. Y. 260.) If the bailor establishes his right to the return of the goods, the burden of explaining their non-return is upon the warehouseman, as " it is within his ability to excuse the want of produc-

tion, if he has such excuse." (*Lockwood* v. *Manhattan Storage & Warehouse Co.*, 28 App. Div. 68, 71.) Such burden is satisfied if the warehouseman shows that the goods were stolen. (*Wilson* v. *Christal*, 187 App. Div. 660.) The burden of going forward then returns to the bailor, and he must show that the negligence of the warehouseman contributed to the theft. To absolve himself from liability, however, the warehouseman must establish the theft " with reasonable certainty." (*Claflin* v. *Meyer, supra.*) To allege and show disappearance merely is not sufficient. Theft by conjecture is not proof of theft. Speculation cannot supplant fact. Those who relinquish custody of their possessions and intrust them to a warehouseman for safekeeping are entitled to a reasonable and well-founded explanation for their non-return. It does not suffice to *say* that they were stolen. There must be *proof* of theft or of facts from which theft is reasonably inferable. The excuse proffered for non-delivery must be a *valid* one. (*Schwerin* v. *McKie*, 51 N. Y. 180, 186.) The testimony presented here to establish the theft of this aluminum is not persuasive. The missing 241 bundles weighed in the aggregate 12,561 pounds. Each bundle weighed about 50 or 55 pounds and was about eighteen inches in diameter and about fourteen inches long. How such bulky and weighty material could have been purloined under conditions described by the defendant is difficult to comprehend. Indeed, it is hard to understand how such a large quantity of goods could have been removed from the *building* if due care were exercised, not merely with respect to access to the room where it was stored, but also in respect to the entrance to the building and the taking of merchandise away from the building. The defendant's evidence concerning the location of the aluminum and the diligence and care it exercised to protect and safeguard it does not harmonize with its theory of theft; the latter tends to negative the former.

The defendant maintains that the plaintiff has not established negligence. " Negligence may be inferred from the circumstances of the case." (*Russell Mfg. Co.* v. *New Haven Steamboat Co.*, 50 N. Y. 121, 127.) " But as such negligence may be proved by the circumstances attending the accident, or the loss of the goods, so it may also be proved by the mere accident itself, if the accident is of such a character as to raise a presumption of negligence. In that case, the rule *res ipsa loquitur* would apply." (*Kaiser* v. *Latimer*, 40 App. Div. 149.) Nor is the vigilance and care which the warehouseman is required to exercise lessened or weakened by the added element that the warehouse is bonded. (Van Zile, Bailments & Carriers [2d ed.], § 169.) The establishment of bonded warehouses was not intended " to relieve that class of persons from

the perils of their enterprise by denying to those bound to pay them for their care the right to its exercise." (*Schwerin* v. *McKie, supra.*) In *Lichtenstein* v. *Jarvis* (31 App. Div. 33; affd., 164 N. Y. 601) the bonded warehouseman attempted to prove that the premises were in disorder at the time the theft was claimed to have been committed, " but the evidence of the superintendent of the defendants was that there was nothing unusual about them when he entered on that morning." It was held that " In order that a bailee may excuse himself for failure to deliver property, he must show that it has been lost without any fault or negligence upon his part. The evidence in this case shows nothing except that the tobacco was gone. This was clearly insufficient." *Armstrong* v. *Sisti* (242 N. Y. 440), stressed by the defendant as determinative of the present case, does not sustain the defendant's position. Rather, it supports that of the plaintiff. Commenting on the obligation of a bonded warehouseman, it was there said (242 N. Y. at p. 445): " The provisions of the United States Revised Statutes, which regulate the manner in which such warehouses may be established and maintained, serve to limit the control of the warehouseman over the warehouse and its contents to the same extent as they create right of partial control in the United States government or its officers; but control and custody is completely relinquished by the depositor and is completely assumed by the warehouseman subject only to the provisions of the statutes. These provisions may be read into the contract of storage but *the obligations assumed by a bonded warehousekeeper to those who deposit goods in the warehouse are the same as those of any other warehousekeeper within the limits of control left by statute to the warehouseman.* (*Claflin* v. *Meyer*, 75 N. Y. 260.)"

Verdict directed for plaintiff for $3,504.51. Thirty days' stay and sixty days to make a case.