## HORACE B. CLAFLIN et al., Respondents, *v.* HENRY J. MEYER, Appellant.

In an action against a warehouseman for refusal to deliver goods entrusted to him, where the refusal is explained by the fact appearing that the goods were lost by a burglary, the burden is upon the plaintiff to establish affirmatively that the burglary was occasioned by, or was not prevented by reason of some negligence or omission of due care on the part of defendant; the court will not assume in the absence of proof that the loss was the result of his negligence.

The warehouseman in the absence of bad faith is only liable for negligence, and one bringing an action against him for the loss of goods must allege and prove negligence; this burden is never shifted; if plaintiff prove demand and refusal to deliver this unexplained is *prima facie* evidence of negligence; but if it appear that the goods have been lost by theft, plaintiff must show that the loss arose from the negligence of defendant.

Where, therefore, the facts proved are as consistent with due care as with the want of it, plaintiff cannot recover.

*Claflin* v. *Meyer* (11 J. & S., 1), reversed.

(Argued October 3, 1878; decided November 26, 1878.)

APPEAL from judgment of the General Term of the Superior Court, of the city of New York, affirming a judgment in favor of plaintiff. (Reported below, 11 J. & S., 1.)

This action was brought against defendant, a warehouseman, for an alleged neglect and refusal to deliver goods delivered to him as such. The answer alleged, in substance, that the goods were stolen from defendant's warehouse without negligence or carelessness on his part.

The facts appear sufficiently in the opinion.

*A. R. Dyett*, for appellant. Defendant was liable for that care an ordinary prudent man would under the same circumstances have exercised in protecting and keeping safe his own property. (*Schmidt* v. *Blood*, 9 Wend., 268.) Negligence of whatever degree is an omission to do what ought to be done. (S. & R. on Neg., §§ 2–6; 5 Duer, 255, 266; 4 N. Y., 349; 1 id., 571, 573.) Plaintiffs were bound to prove such negligence. (*Wilde* v. *H. R. Co.*, 24

N. Y., 430; *Leroy* v. *N. Y. C. R. R. Co.*, 22 id., 514; *Robbins* v. *Mount*, 4 Robert., 553; *Moore* v. *Goedel*, 7 Bos., 591; S. C., 34 N. Y., 527; *Eaken* v. *Brown*, 1 E. D. Smith, 36, 44; *Waldron* v. *R. and S. R. R. Co.*, 8 Barb., 395; *Ross* v. *Fedden*, 41 Law Jour. [N. S.], Q. B., 270; *McGinty* v. *The Mayor, etc.*, 5 Duer, 674; *Arent* v. *Squire*, 1 Daly, 247, 350 *et seq.*; *Schmidt* v. *Blood*, 9 Wend., 268; *Foote* v. *Storrs*, 2 Barb., 326; *Bush* v. *Miller*, 13 id., 489; Story on Bail., § 454; Parsons on Contracts, vol. 2, 143; 6 Robert., 419; 3 Barb., 383; 13 id., 489; 9 How., 227; 20 Barb , 252; 22 id., 141; *Daniel* v. *Metropolitan Rl.*, Law Rep. Com. Pleas, 1867–1868, vol. 3; *Cochran* v. *Dinsmore*, 49 N. Y., 249; *Russ M. Co.* v. *N. H. R. R. Co.*, 50 id., 121; *Steinwig* v. *Erie R. R. Co.*, 43 id., 122; *Bowen* v. *N. Y. C. R. R. Co.*, 18 id., 408; *Field* v. *Same*, 32 id., 339; *E. F. Ins. Co.* v. *D. A. H. C. Co.*, 10 Bosw., 180; *Bowen* v. *N. Y. C. R. R. Co.*, 18 N. Y., 408; *Hegeman* v. *West. R. R. Co.*, 13 id., 9, 26; *Penn. R. R. Co.* v. *Fries*, N. Y. W. D., vol. 7, 32, 33; *Madan* v. *Covert*, 42 N. Y. Super., 143; *Crocheron* v. *S. I. R. R. Co.*, 56 N. Y., 656; Sherman & Redfield on Negligence, § 10, p. 11, § 266 [a], and foot of page 400. and cases in note to page 401.)

*Wm. H. Arnoux*, for respondents. Negligence is a question of fact. (*Fairfax* v. *N. Y. C., etc., R. R.*, 67 N. Y., 11, 14; *Maher* v. *R. R.*, 67 id., 54; *Matter of Beggs*, 67 id., 123.) The plaintiff having proved the loss of the goods, the burden of proof was upon the defendant to establish affirmatively that the loss was not caused by any want of proper care or diligence on his part. (*Coleman* v. *Livingston*, 4 J. & S., 37; *Burnell* v. *N. Y. C. R. R. Co.*, 45 N. Y., 184–189; *Platt* v. *Hibbard*, 7 Cow., 500; *Schwerin* v. *McKie*, 51 N. Y., 180–186; *Fairfax* v. *N. Y. C. and H. R. R. R.*, 67 id., 11, 14; *Steers* v. *Liverpool, N. Y. and P. Steamship Co.*, 67 id., 1, 6; *Faucett* v. *Nichols*, 64 id., 377, 381; *Tompkins* v. *Haile*, 3 Wend., 406; *Forshay* v. *Fergerson*, 5 Hill, 154; Sir Wm. JONES' Essay on Bailments, pp. 44, 79.)

HAND, J.   The counsel for the respondents is correct in his position that the question of burden of proof is the material one upon this appeal.   For the evidence is such that if it were incumbent upon the defendant to prove himself free from all negligence causing or attending upon the burglary and not merely to leave the case as consistent with due care as with the want of it, it is clear that the judgment, so far as it adjudges his liability for the goods, must be affirmed, as we cannot say that such proof of a conclusive character was given.   But the law, as to the burden of proof is pretty well settled to the contrary.   Upon its appearing that the goods were lost by a burglary committed upon the defendants' warehouse, it was for the plaintiffs to establish affirmatively that such burglary was occasioned or was not prevented by reason of some negligence or omission of due care on the part of the warehouseman.

The cases agree that where a bailee of goods, although liable to their owner for their loss only in case of negligence, fails, nevertheless, upon their being demanded, to deliver them or account for such non-delivery, or, to use the language of SUTHERLAND, J., in *Schmidt* v. *Blood*, where "there is a total default in delivering or accounting for the goods," (9 Wend., 268) this is to be treated as *prima facie* evidence of negligence.   (*Fairfax* v. *N. Y. C. and H. R. R. R. Co.*, 67 N. Y., 11; *Steers* v. *Liverpool Steamship Co.*, 57 id., 1; *Burnell* v. *N. Y. C. R. R. Co.*, 45 id., 184.)   This rule proceeds either from the assumed necessity of the case, it being presumed that the bailee has exclusive knowledge of the facts and that he is able to give the reason for his non-delivery, if any exist, other than his own act or fault, or from a presumption that he actually retains the goods and by his refusal converts them.

But where the refusal to deliver is explained by the fact appearing that the goods have been lost, either destroyed by fire or stolen by thieves, and the bailee is therefore unable to deliver them, there is no *prima facie* evidence of his want of care, and the court will not assume in the absence of proof on the point that such fire or theft was the result of his negli-

gence. (*Lamb* v. *Camden and Amboy R. R. Co.*, 46 N. Y., 271, and cases there cited; *Schmidt* v. *Blood*, 9 Wend., 268; *Platt* v. *Hibbard*, 7 Cow., 500, note.) GROVER, J., in 46 N. Y. (*supra*), says, in delivering the opinion of the court, the question is "whether the defendant was bound to go further (*i. e.*, than showing the loss by fire) and show that it and its employes were free from negligence in the origin and progress of the fire, or whether it was incumbent upon the plaintiffs to maintain the action to prove that the fire causing the loss resulted from such negligence." And he proceeds to show that the charge of the judge who tried the cause gave to the jury the former instruction and that this was contrary to the law and erroneous. So SUTHERLAND, J., in 9 Wend. (*supra*), in the case of a warehouseman, says: the *onus* of showing the negligence "seems to be upon the plaintiff unless there is a total default in delivery or accounting for the goods." And he cites a note of Judge COWEN to his report of *Platt* v. *Hibbard* (7 Cow., 500) in which that very learned author says, criticising and questioning a charge of the circuit judge, "the distinction would seem to be that when there is a total default to deliver the goods bailed on demand, the *onus* of accounting for the default lies with the bailee; otherwise he shall be deemed to have converted the goods to his own use and trover will lie (*Anonymous*, 2 Salk., 655), but when he has shown a loss or where the goods are injured, the law will not intend negligence. The *onus* is then shifted upon the plaintiff."

It will be seen, as the result of these authorities, that the burden is ordinarily upon the plaintiff alleging negligence to prove it against a warehouseman who accounts for his failure to deliver by showing a destruction or loss from fire or theft. It is not of course intended to hold that a warehouseman, refusing to deliver goods, can impose any necessity of proof upon the owner by merely alleging as an excuse that they have been stolen or burned. These facts must appear or be proved with reasonable certainty. Nor do we concur in the view that there is in these cases any

real " *shifting* " of the burden of proof. The warehouseman in the absence of bad faith is only liable for negligence. The plaintiff must in *all cases*, suing him for the loss of goods, allege negligence and prove negligence. This burden is never shifted from him. If he proves. the demand upon the warehouseman and his refusal to deliver, these facts unexplained are treated by the courts as *prima facie* evidence of negligence ; but if, either in the course of his proof or that of the defendant, it appears that the goods have been lost by theft, the evidence must show that the loss arose from the negligence of the warehouseman.

Applying these principles to the present case, we must hold that when it appeared, as it did, that the goods were taken from the defendant's warehouse by a burglarious entry thereof, the plaintiffs should have shown that some negligence or want of care, such as a prudent man would take under similar circumstances of his own property, caused or permitted or contributed to cause or permit that burglary.

Examining the case under this rule of law we find that there was no proof tending to show when the warehouse was entered, whether in the night or day time. It was, it seems, during a large portion of every twenty-four hours in the custody of the government janitors. It does not appear nor is it found whether access to the warehouse was gained through the scuttle or roof or by the ordinary entrances, whether the thieves got in by stealth and broke *out* through the roof or broke *in* through the roof. The evidence was clear that access to the roof was gained from an adjoining tenement-house by means of a burglar's ladder, and a blank brick wall rising some twenty or twenty-five feet above the roof of the tenement-house was scaled by means of this ladder ; that the goods were removed from the third story of the warehouse where they were stored, the packages being carefully replaced so as to delay observation and discovery, and the marks removed from the goods in an upper room of the tenement-house, hired probably by the thieves for the purpose.

The plaintiffs rested their case upon the pleadings without

proving any demand or refusal, admitting a "robbery," but not attempting to show any negligence, in the defendant.

The motion for dismissal of the complaint then made by the defendant on the ground that no negligence had been shown, that there was no evidence of refusal to deliver, and the burden was still upon the plaintiffs, should I think have been granted ; and its denial may perhaps explain the subsequent finding by the referees. But if, from the evidence afterwards given on the part of the defendant himself, his negligence appeared, that finding could not now perhaps be disturbed, although it may have proceeded upon a false theory as to the burden of proof.

The respondent's counsel insists that this evidence discloses defects in the construction of the scuttle and the roof and that upon this fact want of due care can be predicated ; but all the testimony concurred that the scuttle was as secure and as securely fastened as in any warehouses of that class, was as well built as any wooden scuttle in the city, that no grating upon the coping to obstruct a passage on to the roof from a neighboring building was ever known to be put upon any warehouse, and one witness, a government officer who stated that he had seen nearly all the bonded warehouses in New York, testified that the scuttle was as strong as on any warehouse he ever saw. Another witness, also a government officer, said that it compared favorably with scuttles of other warehouses as to strength and safety. These statements are without any contradiction. It is true the police officer Field, called as a witness by the defendant, stated upon cross-examination that some warehouses had an inner grating, that many had not, that the principal warehouses had them, that this grating was more protection than the scuttle, but he did not explain what this grating was, how long used, how constructed, or whether ever applied to a United States bonded warehouse of this class. A question to this witness as to how this scuttle compared in strength and safety with other warehouse scuttles was excluded on the objection of the plaintiffs, but he stated that it was a good strong wooden

scuttle and the fastenings good. He was positive that the thieves broke out from the inside and he was equally positive that the strength of scuttle fastenings was of no importance when burglars were once upon a roof as they could go through the roof itself easier than through a scuttle.

The evidence of this witness was not in my opinion sufficient upon which to base a finding "of want of care which an ordinarily prudent man would under the circumstances have exercised in relation to the protection and safe keeping of his own property." And on the whole we do not think, taking all the testimony together, that there was sufficient evidence of the fact of negligence. In the language of MAULE, J. (13 C. B., 916), "when we say that there is no evidence to go to a jury, we do not mean literally none, but that there is none that ought reasonably to satisfy a jury, that the fact sought to be proved is established."

The theory upon which the case was tried by the plaintiffs absolved them from affirmative proof upon this point and it may well be that upon another trial much fuller and more satisfactory testimony may be produced as to the care ordinarily used and proper to be used in the construction of the roofs and fastenings of warehouses of this sort, but that given by the defendant upon this trial did not in our opinion convict him of negligence.

I have so far left out of view a feature of this case which has caused us a good deal of embarrassment. I refer to the inspection of the warehouse and its roof and scuttle by the referees in the presence of counsel, and the statement in their report that their findings are based upon the proofs *and* "such view."

If the intention of the parties was to submit themselves to the decision of the referees absolutely, irrespective of the evidence, these would become arbitrators, and their decision an arbitration, and the arrangement would be a discontinuance of the action. (*Larkin* v. *Robbins*, 2 Wend., 505; *Merritt* v. *Thompson*, 27 N. Y., 225; *Jordan* v. *Hyatt*, 3 Barb., 278.) We cannot suppose that such was the intention of the parties

or hold it to be fairly the consequence of their conduct.  If the inspection of the premises meant anything more than that by it the referees might better understand the evidence (the adjournment of the reference to the warehouse and the examination of a witness upon the spot would favor this view of it), and was a submission to them of additional ocular evidence of facts to be considered in the decision, this evidence to influence the fate of the case upon appeal should appear in some way before this court.  The defendant having moved for a nonsuit and having excepted to the finding of negligence as wholly unauthorized by the evidence and there being none produced by the plaintiffs, it would seem that they, to sustain the finding by any evidence produced by the defendant, must be able to show it to us *in the case.*  If this consists in what was seen at the warehouse by the referees it should have been detailed and spread out in the case.  As the record now stands we must treat it as if it had no existence and pass upon the questions as if the only evidence was that appearing in the appeal book.

The result at which we have arrived renders it unnecessary to consider any of the exceptions to the exclusion of evidence ; and as to the measure of damages, new facts developed upon another trial with regard to the payment by the plaintiffs of the duties upon the goods or their ascertained liability or non-liability for them may very probably end all controversy upon this point.  The plaintiffs in case they are entitled to recover should of course be limited to an indemnity for their loss and should use reasonable exertions to diminish such loss. (*Dillon* v. *Anderson,* 43 N. Y., 231.)  Whether their loss necessarily includes the duties payable upon the goods if or when they should withdraw them from the warehouse, we are not called upon at present to decide.

The judgment must be reversed and new trial ordered, with costs to abide the event.

All concur, except MILLER and EARL, JJ., absent at argument.

Judgment reversed.