ANSON A. GIBBS, APPELLANT, *v.* CHARLES COYKENDALL, RESPONDENT.

*Agister — liability of, for diseases contracted by cattle.*

This action was brought to recover damages for the loss of eighteen head of cattle which the plaintiff had hired the defendant to pasture upon his farm. The cattle which were sound and healthy when turned into the pasture, soon after became sick and died of Texan fever, which disease they contracted from the dejections of Texan cattle which the defendant had previously pastured upon the farm, of which fact the plaintiff was ignorant.

*Held*, that as the jury found that the defendant did not, at the time of receiving the plaintiff's cattle, know that there was danger of native cattle contracting the disease by being pastured upon fields previously occupied by Texan cattle, he was not liable for the damages sustained by the plaintiff.

That the liability of native cattle to contract such disease under such circumstances was not sufficiently well known among the farmers of this State to charge the defendant with knowledge of that fact.

APPEAL from a judgment in favor of the defendant, entered upon a verdict rendered at the Livingston Circuit, and from an order denying a motion for new trial.

*James Wood*, for the appellant.

*D. W. Noyes*, for the respondent.

HAIGHT, J.:

This action was brought to recover the value of eighteen head of cattle. The plaintiff had hired the defendant to pasture the cattle in question upon his farm. The defendant had previously depastured his field with Texan cattle. The plaintiff's cattle were sound and healthy when turned into the defendant's pasture, but within two or three weeks thereafter they were taken sick with a disease known as Texan fever and died. The disease was contracted from poisonous or infectious matter left upon the field by the Texan cattle. Evidence was given by the plaintiff upon the trial tending to show that the defendant knew that native cattle were liable to contract the disease by pasturing in fields previously occupied by Texan cattle, and that the plaintiff did not know that Texan cattle had previously been depastured on these fields. Evidence was given on behalf of the defendant to the effect that he did not know that native cattle were liable to contract the disease by being pastured upon fields previously occupied by Texan cattle. This question of fact was submitted to the jury under the instruction that if the defendant knew that there was danger of native cattle contracting the disease by being pastured upon fields previously occupied by Texan cattle, that he should have informed the plaintiff of the fact that Texan cattle had been pastured upon his premises before the plaintiff had turned his cattle in, and that in failing to inform the plaintiff he was guilty of negligence and would be liable, but that if he did not know of the dangers attendant upon pasturing native

cattle upon fields previously occupied by Texan cattle, then he would not be liable. The jury found for the defendant. After the testimony had closed, counsel for the plaintiff requested the court to charge the jury " that if the jury believed that Texan cattle had been pastured in the lot, and that Texan fever could be communicated to native cattle pasturing in the lot where Texan cattle had been pastured, that the plaintiff's cattle died of Texan fever communicated to them from the noxious emanations of the Texan cattle pastured before they went into the pasture, then the plaintiff was entitled to recover; that the defendant was bound to furnish a healthy and safe pasture so far as poisonous substances in the field were concerned." Plaintiff's counsel also requested the court to charge " that the effect of the introduction of Texan cattle was a matter of public notoriety; that it had been known since 1868, and had been the subject of public discussion; that commissioners had been appointed by the United States government to investigate it, and that the defendant was bound to know of the effect of pasturing Texan cattle where native cattle were to be pastured from the publicity that had been given to it, and that it was his duty to notify the plaintiff that Texan cattle had been pastured on the lot when the bargain for pasturing was made." Both of these requests were refused, and the exceptions taken on such refusal present the only questions which we are called upon to determine upon this appeal. The questions thus presented are somewhat novel, and yet we think they may be properly disposed of upon well recognized principles. An agister of cattle is a bailee for hire, and as such is bound to use ordinary diligence properly to care for and protect the cattle placed in his charge, and is responsible for loss occasioned by his negligence. He is bound to furnish a pasture secure against the ordinary accidents incident to the cattle to be pastured. The field must be properly fenced and be free from dangerous places or obstacles. A failure in these respects will render him liable for damages occasioned thereby. But he is not an insurer of the property, and unless he is guilty of negligence he would not be liable for injuries that may be suffered through other causes, and over which he has no control. He is bound to use ordinary care, that care which an ordinarily prudent person would exercise over his own property of like character.

In the case of *Claflin* v. *Meyer* (75 N. Y., 260) it was held that a warehouseman was not liable where a burglar had broken into the warehouse and stolen goods where the warehouseman had exercised ordinary diligence to prevent such burglary. In the case of *Morgan* v. *Crocker* (62 N. Y., 626; reversing 3 T. & C., 301), the defendant was the keeper of cattle yards in the city of Buffalo. The defendant had received cattle at the yards to be kept over night and fed. During a violent storm the yards were overflowed and the cattle were drowned. It was held that the defendant was not guilty of negligence, though the yards had previously been overflowed, but not to an extent to endanger the lives of cattle, and consequently the defendant was not liable.

In the case under consideration there is no claim that the cattle suffered because of any dangerous place or obstacle in the field. It was from deleterious influences, dejections from Texas cattle or poisonous matter, that affected the soil or vegetable growth in the field which could not be seen or known to exist, and which could not well be guarded against unless it was known that Texan cattle were liable to thus infect the field. Consequently we are of the opinion that the defendant was guilty of no negligence unless he possessed such knowledge, and the jury has found that he did not.

Again, it is claimed that he ought to have known of the deleterious influences that such cattle would create. It is true that like trouble had been occasioned in several of the western States, and to some extent in this State, that it had been the subject of investigation by the government, and in some of the States laws had been passed prohibiting the pasturing of Texan cattle. But the liability of native cattle to contract the disease from Texan cattle was but little known or understood in this State. It was not a matter of such public notoriety among our farmers as would justify the court in charging, as a matter of law, that the defendant was bound to have known it. We are consequently of the opinion that the court did not err in refusing to charge as requested, and that the judgment and order should be affirmed.

SMITH, P. J., BARKER and BRADLEY, JJ., concurred.

Judgment and order affirmed.