we are aware, to the case of a trust. Its application has been confined to life estates in which the legal title to the property is in the life tenant. Amory v. Lord, 9 N. Y. 403; Woodruff v. Cook, 61 N. Y. 638.

While it is plain, therefore, that the trust must fail so far as the gift of one-third of the income, successively, to the mother, aunt, and sister are concerned, we are urged to separate from the rest of the trust the gift of two-thirds of the income for the lives of the sister and mother. This, of course, we ought to do, if the result can be accomplished consistently with the intent of the testatrix as manifested by the language of her will. There is a difficulty, however, which seems to me impossible to overcome, in the way of effecting the desired separation. The testatrix has not directed the division of her residuary estate into two parts, and that the income of one of those parts shall go in one direction and the income of the other part in another. She evidently contemplated that her residuary estate should be kept together as a whole, and that the income derived from it as a whole, reckoned in thirds, should be paid, two-thirds of it to one set of beneficiaries, and one-third of it to another set. Upon the theory of two separate trusts, the first trust gives two-thirds of the income to the sister during her life, and then to the mother during her life, and the remainder to the institutions named in the ninth paragraph of the will; while the second trust gives one-third of the income to the mother for her life, then to the aunt for her life, and finally to the sister for her life, with a similar remainder over to the institutions. Regarding them as separate trusts, the remainder in case of the first trust, it is said, should go to the institutions upon the death of the sister and mother. But what remainder? According to this theory, the aunt under the second trust would still be entitled to one-third of the income of the whole estate; and this could not be ascertained unless all the property constituting the principal from which the income was derived remained under the control of the trustees until the aunt's life was terminated. Such must have been the result contemplated by the testatrix, but, unfortunately, it is a result which the law forbids. It was plainly her purpose to provide, not only for her mother and sister, but for her aunt; and we shall have to disregard this purpose in order to maintain the validity of any part of the trust in question.

I think the judgment should be affirmed. All concur.

Judgment affirmed, with one bill of costs and the disbursements of all the respondents.

---

(23 Misc. Rep. 666.)

## AARONSON v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Term.    June 6, 1898.)

1. WAREHOUSEMAN—NEGLIGENCE—FAILURE TO DELIVER GOODS.

A warehouseman cannot rebut the presumption of negligence raised by proof of his failure to deliver goods upon demand by mere proof that they cannot be found, without any affirmative explanation for their disappearance.

2. SAME—EVIDENCE OF DUE CARE.

    Evidence that a railroad company, which has in its custody as ware-houseman a valise containing property of value, placed it upon the floor of its dock, which was guarded by watchmen, who checked off every-thing that went out, is not in itself sufficient to establish conclusively that the disappearance of the contents of the valise in question was not due to want of proper care.

3. SAME—LIMITATION OF LIABILITY.

    A provision in a shipping receipt given by a railroad company to a shipper that "property not removed by the person entitled to receive it within 24 hours after its arrival at destination may be kept in the car, depot, or place of delivery of the carrier at the sole risk of the owner," does not relieve the company from its ordinary liability as a warehouseman, where it fails to deliver the goods on demand, and can offer no explanation of their loss.

    Appeal from Fifth district court.

    Action by Esther Aaronson against the Pennsylvania Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

    Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

    Robinson, Biddle & Ward, for appellant.
    J. J. Harris, for respondent.

    GILDERSLEEVE, J. The plaintiff, on November 19, 1897, delivered to the agents of defendant a valise, containing articles of the value, as found by the trial justice, of $40, to be sent as freight from Philadelphia to New York by the defendant. Some 18 days afterwards she went to the company's place in New York, and made a demand for the valise, which was delivered to her by defendant's agents, but upon opening it upon such delivery, she discovered that the contents contained therein at the time of sending had disappeared. The testimony shows that the valise was in good condition, and properly closed, when it was delivered to the defendant; that it was sent right through to New York, and was stored on the defendant's dock,—"put on the floor on the dock." The shipping receipt delivered by defendant to plaintiff in Philadelphia at the time of sending the valise contained this condition, viz.: "(5) Property not removed by the person or party entitled to receive it, within twenty-four hours after its arrival at destination, may be kept in the car, depot, or place of delivery of the carrier at the sole risk of the owner of said property." The court having refused to dismiss the complaint at the conclusion of plaintiff's case, the defendant offered evidence tending to show that the valise was carried in a sealed car, and that immediately before the discharge at defendant's pier in New York the seals were found to be intact; that this valise, so far as John Ryan, who discharged the goods, can remember, and so far as the tally (defendant's Exhibit 1) indicates, was apparently in good order when removed from the car; that the goods unloaded from trains are placed on the floor on the dock; that a watchman is kept on the dock, one on each pier, and a man on the floats; that a watchman is kept at the entrance of the dock, to check what goes out. It must be said from the foregoing

facts that the loss occurred after the defendant had ceased to be a carrier and had become a warehouseman.    Fairfax v. Railroad Co., 67 N. Y. 14.    The duty, therefore, of defendant was reasonable care in the protection of the goods.    Claflin v. Meyer, 75 N. Y. 260.    The principles of law applicable to this case are found in the following authorities, viz.:

In the case of Wynantskill v. Murray, 90 Hun, 555, 36 N. Y. Supp. 27, it is held that "after the lapse of a reasonable time for the consignee to remove the goods, the liability of the carrier as such ceases; and, if he is responsible thereafter, it is as a warehouseman."

In the case of Fairfax v. Railroad Co., 67 N. Y. 14, Judge Rapallo used the following language:

"It appears that the portmanteau was taken in charge by the defendant, and transported to New York, and there deposited by it in its baggage room. The defendant thus incurred the responsibility of a warehouseman, at least, without regard to the question whether it became liable as a common carrier.    When plaintiff demanded the article, it had disappeared, and no account is given of the cause of such disappearance.    This is prima facie evidence of negligence. * * * The proof of the general care with which the baggage room and its contents were guarded was not sufficient to establish conclusively that there was no want of care in this particular instance."

In the case of Kaiser v. Latimer, 9 App. Div. 36, 41 N. Y. Supp. 94, it is held that:

"A warehouseman, in the absence of bad faith, is liable only for negligence. The general rule is that the burden of proof remains where the issue made by the pleadings places it.    A failure on the part of a bailee to deliver to a bailor his property on demand raises a presumption of liability, but this presumption is prima facie only, and may be overcome by evidence; and where it appears that the loss was caused by some accident, the onus rests upon the bailor to prove that such accident was caused by the want of care upon the part of the bailee."

It is further held that, although the plaintiff had made out a prima facie case when he proved the defendant's failure to deliver the goods on demand, yet, as the basis of the plaintiff's cause of action was the defendant's negligence, the burden of proving such negligence rested upon the plaintiff, throughout the trial.

In the case of Stewart v. Stone, 127 N. Y. 501, 28 N. E. 596, it is held that:

"While, as a general rule, when a bailee fails, on demand, to deliver to the bailor property to which the latter is entitled, the presumption of liability arises, and if the goods cannot be found it furnishes the imputation of negligence as the cause, still such prima facie case may be overcome when it is made to appear that the loss was occasioned by some misfortune or accident not within the control of the bailee, and then the onus is upon the bailor to prove that this was chargeable to the want of care of the bailee."

In the case of Claflin v. Meyer, 75 N. Y. 260, it is held that:

"In an action against a warehouseman for refusal to deliver goods intrusted to him, where the refusal is explained by the fact appearing that the goods were lost by a burglary, the burden is upon the plaintiff to establish affirmatively that the burglary was occasioned by, or was not prevented by reason of, some negligence or omission of due care on the part of defendant. The court will not assume, in the absence of proof, that the loss was the result of his negligence."

52 N.Y.S.—7

It is further held in this case that:

"The warehouseman, in the absence of bad faith, is only liable for negligence, and one bringing an action against him for the loss of goods must allege and prove negligence. This burden is never shifted. If plaintiff prove demand and refusal to deliver, this, unexplained, is prima facie evidence of negligence; but, if it appear that the goods have been lost by theft, plaintiff must show that the loss arose from the negligence of the defendant."

In the case at bar we find, as above indicated, that after plaintiff had established a prima facie case of negligence on the part of the defendant by proving the delivery of the valise and its contents to defendant, the demand for the same, and the failure of the defendant to deliver the contents, the defendant undertook to explain. It showed, as we have seen, the customary precautions taken to guard against loss; that the valise came from Philadelphia to New York, and was delivered at the dock of the company in apparently good condition. But no affirmative explanation whatever is given for the disappearance of the contents of the valise. It is not shown affirmatively that there was a loss by theft, or by accident, or by fire, or by any other specified cause. Its explanation is that the goods are gone, and that it is unable to deliver them on plaintiff's demand; but the cause for the disappearance of the goods is left entirely to conjecture. The proof of the general care with which baggage is guarded by the defendant is not sufficient to establish conclusively that there was no want of care in this particular instance. See Fairfax v. Railroad Co., supra. It seems to us that the defendant has entirely failed to explain the loss or rebut the presumption of negligence on its part that was created by the plaintiff's testimony. The assertion by the defendant of the loss without proof of some facts tending to show that the loss was occasioned by some misfortune or accident, not within the control of defendant, does not place upon plaintiff the onus of establishing defendant's want of care beyond the presumption that arose, as we have already said, at the conclusion of plaintiff's case. Otherwise stated, the defendant showed no specific circumstances of loss in respect of which it became the duty of plaintiff to show want of care on the part of defendant. The plaintiff fully sustained the burden of proof required under the circumstances.

It is urged by counsel for defendant that the liability of defendant in this case is qualified by the clause in the shipping receipt above quoted, and that such stipulation, although not exonerating defendant from liability for its negligence, imposed upon plaintiff the burden of showing affirmatively that defendant was guilty of negligence. See Gleadell v. Thomson, 56 N. Y. 197; Steinweg v. Railway Co., 43 N. Y. 123; Lamb v. Camden, 46 N. Y. 272; Canfield v. Railway Co., 93 N. Y. 532. We have already seen that the liability of the defendant in this case is that of a warehouseman, and that from plaintiff's evidence a presumption of defendant's negligence arose. This presumption has not been rebutted by defendant, and its want of care was, therefore, affirmatively established. The clause in question in the shipping receipt cannot be said to have relieved defendant from its liability as a warehouseman.

The judgment should be affirmed, with costs. All concur.