ABNER S. LEVINE, Respondent, *v.* THE D., L. & W. R. R. Co., Appellant.

(County Court, Oneida County, November, 1911.)

Carriers — Carriage of goods — Actions against carriers — Presumption and burden of proof — From failure to deliver.

> Where a fur overcoat is shipped by railroad in a box which is received at its destination and suffered to remain until the company's liability becomes merely that of a warehouseman, and where the box, when it is delivered to the consignee, is found to contain only some pieces of old iron and paper, a presumption of negligence on the part of the carrier arises; and the burden is then upon the carrier to explain the loss, if any reason therefor exists other than its own act or fault, and this burden is not sustained by the mere production of the empty box.

APPEAL from a judgment of a justice of the peace of the city of Utica in favor of the plaintiff and against the defendant.

Kernan & Kernan (Howard W. Taylor, of counsel), for appellant.

J. A. Goldstone, for respondent.

HAZARD, J. It appears that, on the 11th day of November, 1910, the plaintiff shipped a fur overcoat, inclosed in a

wooden box, to a consignee in New York city, over the defendant's road, taking the usual bill of lading and receipt therefor. The package seems to have arrived at defendant's terminal in New York city in due season; and, on the sixteenth of November, a notice was sent to the consignee.

The witness McArdle, an employee of the defendant, testified that, sometime in November, day not stated, he found the shipment; and he says, " I noticed nothing wrong about it." It appears that, on the eighth of December, McArdle went with a " driver " to look for the package, and that the driver discovered that the box " rattled," and that it was opened at the driver's request and was found to contain some old iron pipe and some old paper, and he refused to take it. Thereafter the box was reshipped to the plaintiff at Utica, who also refused to accept it. He brings this action to recover for the value of the goods, and has received a judgment for the full amount claimed, from which the railroad company appeals.

There is practically no dispute about any of the facts in the case, and the question is, therefore, one of law. The defendant contends that it cannot be held liable, except upon proof by the plaintiff of some negligence on its part; and it contends that none has been proven. I do not think the defendant's contention can prevail; and it seems to me that it is incumbent upon it, if it wishes to excuse itself for the loss of the goods, to show what has become of them. There is no evidence in the case from which it can be even inferred when or where or how the coat disappeared, and we are unable to decide whether it was lost in transit or after it reached its destination at its terminal. It is true McArdle testified as above quoted; but, keeping in mind that the coat was in a box, the cover of which had been nailed down, it does not appear that he made an examination more than to look at the outside of the box. For the purposes of the case, however, we will assume, giving the appellant the benefit of the doubt, that the box and its contents were duly delivered by it to its terminal, and were there suffered to remain for such a time that, as a matter of law, the status of the defendant as a common carrier was changed to simply that of a

warehouseman; and we will consider the case on that basis. Appellant quotes the case of Ballston Refrigerating Storage Co. v. Eastern States Refrigerating Co., 142 App. Div. 135, in support of its contention; but I do not see that the law, as there stated, is of assistance to him. I will quote from page 139 of the opinion: The gravamen of an action such as this is negligence. The burden of proof rests on plaintiff throughout the entire trial to establish such negligence by a preponderance of evidence. The contract of the bailee is to return the property in proper condition, and when a plaintiff establishes a failure to do so a *prima facie* case of negligence is made out which places the defendant under the necessity of offering an explanation of the loss or damaged condition of the property in order to meet such *prima facie* case." Further on on the same page the court quotes with approval the following language: "As a general rule, when a bailee fails on demand to deliver to the bailor property to which the latter is entitled, the presumption of liability arises, and if the goods cannot be found it furnishes the imputation of negligence as the cause. But such *prima facie* case may be overcome when it is made to appear that the loss was occasioned by some misfortune or accident not within the control of the bailee." It is true that case holds, as do others, that the basis of the action is negligence, and that the affirmative of the issue is not shifted to the defendant, but remains through the trial with the plaintiff; but, from the language above quoted, it is apparent that there is a *prima facie* case of negligence made out when a bailee proves delivery to a warehouseman, demand of return and failure of the warehouseman to produce the goods. The most instructive case which I have found on this subject, and the one most closely in point, is that of Claflin v. Meyer, 75 N. Y. 260. In that case a warehouseman had been sued for failing to return the bailee's goods, and it appeared that the warehouse had been burglarized. The court said: "Upon its appearing that the goods were lost by a burglary committed upon the defendants' warehouse, it was for the plaintiffs to establish affirmatively that such burglary was occasioned or was not prevented by reason of some negligence or omission of due

care on the part of the warehouseman." And continues: " The cases agree that where a bailee of goods, although liable to their owner for their loss in case of negligence, fails, nevertheless, upon their being demanded, to deliver them or account for such non-delivery, or, to use the language of Sutherland, J., in Schmidt v. Blood, where ' there is a total default in delivering or accounting for the goods,' this is to be treated as *prima facie* evidence of negligence." The court says that this rule arises from the necessity of the case, it being presumed that the bailee has exclusive knowledge of the facts, and that he is able to give the reason for his non-delivery, if any exists, other than his own act or fault, or from a presumption that he actually retains the goods, and by his refusal converts them.

It seems to me that these and numerous cases which might be cited clearly establish the proposition that, upon proving the delivery to this defendant of the coat and its failure to deliver it or return it, it then became incumbent upon this defendant to in some way account for its loss. This it seeks to do by producing the empty box; and appellant's counsel contends that that is sufficient proof to establish that the coat was stolen, to recast upon the plaintiff the burden of proof and compel him to prove some negligence against the defendant, before he is entitled to recover. I cannot take that view of it. I am utterly unable to see how defendant is helped by producing the empty box. I fail to see that the situation is any different than if the defendant could not produce the box, and the entire shipment including the box was missing. It is true that we may infer, in either case, viz., where only the empty package is found, or where nothing at all is found, that something has been stolen or lost; but it seems to me that the inference can be as clearly and as surely drawn in the one case as in the other. I should regard this case, as presented by the defendant, as presenting what is referred to in the cases quoted above as a " total default in delivering or accounting for the goods." It seems to me that it is the fair intendment of the cases that the defendant should account for his failure to produce in a more satisfactory way than to produce an empty package or

simply say " I cannot find the package," both of which amount to just the same thing. True, the existence of the empty package in New York shows that the defendant delivered at least the box to its terminal, and we are giving him all the benefit that I think he is entitled to by reason of that fact; but I do not believe that, by producing that empty box," it is made to appear that the loss was occasioned by some misfortune or accident not within the control of the bailee." In Claflin v. Myer's case it is said: " It is not of course intended to hold that a warehouseman, refusing to deliver goods, can impose any necessity of proof upon the owner by merely alleging as an excuse that they have been stolen or burned. These facts must appear or be proved with reasonable certainty." In that case a burglary was proved, it being shown that burglars had entered the warehouse and secured quantities of goods therefrom; and the court held that, under such circumstances, there must be proof that the warehouseman had not exercised due diligence in protecting the goods. In other cases the warehouseman has excused himself by showing that the goods were destroyed by fire, and the courts have held that it is then incumbent upon the bailor to prove that the fire was caused by some negligence for which the bailee was responsible; but here the bailee proves nothing whatever. The goods are gone, the box is empty, and I do not believe that such proof, or we might better say utter failure of proof, shifts the burden back upon this plaintiff. In the case of Mautner v. Terminal Warehouse Co., 25 Misc. Rep. 729, the court said: " It is true that when he has proved the contract of storage, the receipt of the goods by the warehouseman and the injury upon which his cause of action is predicated, a *prima facie* case of negligence has been made out, *and he would be entitled to judgment if no further proof should be made.* But where the defendant has offered evidence accounting for the damage which is susceptible of the inference that there was no lack of care on his part, *the plaintiff must resume* his proofs, and reassume the burden of establishing by affirmative evidence that the defendant had been negligent." It seems to me that it is a fair inference from all of these cases that, before the plaintiff must " resume

PEOPLE *v.* HARRIS. **355**

Misc.] Court of General Sessions, New York County, November, 1911.

O'SULLIVAN, J. The indictments herein set forth that on the 25th day of March, 1911, the defendants were engaged in business in the county of New York under the name of the Triangle Waist Company, and were the owners and proprietors of a factory which occupied the ninth floor of a certain building at the corner of Washington place and Greene street. It is alleged that the defendants were the owners of the factory, and conducted, operated, supervised and controlled it; that on said day a fire occurred in the factory, by which employees of the defendants were burned to death.

Thereafter, on the charge that defendants by their criminal and negligent conduct, control and supervision of their factory caused the death of several employees, the defendants were indicted for manslaughter in the first and second degrees.

Seven indictments have been filed against the defendants for manslaughter. These indictments are identical, with the exception of the name of the person alleged to have been killed. The defendants have demurred to five of the indictments and to each and every count therein.

Three counts in each indictment charge manslaughter in the first degree and three manslaughter in the second. The first count charges common law manslaughter in the first degree. It alleges, in substance, that the defendants did willfully and feloniously choke, suffocate and strangle the deceased by means of fire and of the smoke thereof, by reason whereof the deceased died. The defendants demur to this count on the ground that the " mere fact that death resulted is not alone sufficient to justify the inference that the weapon was deadly, or that the means of death was likely to produce death." They further contend " that the court must be able to say beyond a reasonable doubt that death is likely to result when a person is burned." The defendants' argument might well be directed to this point if this were a charge of assault in the first degree. This being a charge of manslaughter and the fact and cause of death being alleged, the argument is inapplicable. Whether the allegations in this count are susceptible of proof is not a matter to be considered on demurrer, and the demurrer thereto is disallowed.

**356** 'PEOPLE *v.* HARRIS.

The second count of the indictment, which charges manslaughter in the first degree, alleges that defendants while engaged in the commission of a misdemeanor did willfully and feloniously kill the decedent. This count is based upon an alleged violation of section 80 of chapter 36 of the Laws of 1909, as amended by chapter 461 of the Laws of 1910, which enactments are known as the Labor Law.

With other provisions for the regulation of factories, section 80 of article 6 of the Labor Law provides that " all doors leading in and to any such factory shall be so constructed as to open outwardly where practicable, and shall not be locked, bolted or fastened during working hours." By section 1275 of the Penal Law any person who violates or does not comply with article 6 of the Labor Law is guilty of a misdemeanor. By section 1050 of the Penal Law a person engaged in committing or attempting to commit a misdemeanor affecting the person or property, either of the person killed or of another, is guilty of manslaughter in the first degree.

The allegations in this count charge that the defendants fastened, locked and bolted, and kept fastened, locked and bolted, a certain door in their factory, which door led to a hallway in the building giving exit to the public street; that at the time of the fire the decedent attempted to leave the said factory by means of the said door, but by reason of the door being locked and bolted the decedent was unable to leave and was burned to death, for all of which this count charges the defendants with manslaughter in the first degree.

The defendants contend that under the Labor Law they are not chargeable with responsibility. It is claimed that under section 94 of the Labor Law, which declares who shall be responsible for the observance and punishable for the violation of the Labor Law, this count fails to charge the defendants with the commission of any crime, inasmuch as the count does not show that the defendants owned and operated a tenant factory. In the language of the Labor Law the word " factory " frequently appears to be used interchangeably with the word " building," and the word " owner " seems in certain places to refer to the owner of the building, in others the owner of the factory or manufacturing

PEOPLE v. HARRIS. 357

[Misc.] Court of General Sessions, New York County, November, 1911.

establishment. The expression "tenant of a factory" may be confused with the term "tenant of a building."

It is important to give these words and phrases their proper distinction. Obviously the owner of the building may be the tenant of the same, and, while the tenant is not necessarily the owner of the building, he may be the owner of the factory or manufacturing establishment. Certain sections of the Labor Law impose particular obligations upon the owner of a building used as a factory; certain others place distinct duties upon the owner or proprietor of a factory, and there are certain obligations common to both. Section 94 defines a tenant factory as "a building, separate parts of which are occupied and used by different persons, companies or corporations, and one or more of which parts is so used as to constitute in law a factory."

The defendants in this count are described as "the owners and proprietors of a certain factory, to wit, a certain workshop and manufacturing and business establishment which then and there occupied the whole of the ninth floor of a certain building situated at the corner of Washington place and Greene street and were then and there the lessees and tenants of the said floor." The defendants insist that because this count fails to describe them as owners and operators of a *tenant factory* it must be resolved in their favor. It seems unnecessary to state that owners and proprietors in control of a factory in which employees have suffered injury from the failure of such owners to perform their duty have been held responsible under common and statutory law; but the important consideration here is that the statute has made the non-performance of a particular duty a misdemeanor, which, in this instance, becomes the foundation of a charge of manslaughter in the first degree and the defendants are entitled to a strict construction of the statute.

This count alleges that the defendants were the owners and proprietors of a factory on the ninth floor of a certain building, in which factory it is further stated that many persons were employed. Section 2 of the Labor Law provides that "the term factory shall be construed to include also any mill, workshop or other manufacturing or business

establishment where one or more persons are employed at labor."

In the case of People v. Taylor, 192 N. Y. 401, the Court of Appeals, speaking through Judge Chase, said that "An examination of all the sections in the article of the Labor Law relating to factories shows that it was the intention of the legislature to make an owner, as the person beneficially interested, generally liable for violations of the article, and also to place upon the persons immediately or personally connected with the acts prohibited the responsibility for carrying out the provisions thereof." It does not appear that the defendants herein were the owners of a tenant factory; if they were actually such and their responsibility was created or increased by i·· 'icting them as owners of a factory, they have reason to complain; but section 94 of the Labor Law provides as follows: "* * * Except as in this article otherwise provided the person or persons, company or corporation conducting or operating a factory, whether as owner or lessee of the whole or of a part of the building in which the same is situated, or otherwise, shall be responsible for the observance and punishable for the non-observance of this article, anything in any lease or agreement to the contrary notwithstanding."

Every consideration of the law on the subject convinces me that the owners of a factory are liable for a violation of the provisions of section 80 of the Labor Law.

In further demurring to this count the defendants argue that section 80 of the Labor Law in conjunction with section 94 thereof is unconstitutional in that it deprives them of their property without due process of law in violation of the Constitution of the United States and of the State of New York. They assert that the language of section 80 is ambiguous; that it may mean either that all doors shall be locked, or it may mean that no door shall be locked, during working hours; that the hardships arising from compliance with the provisions of the statute make it harsh and unreasonable; that it is an unjust and arbitrary exercise of the police power of the State.

It is not my intention to follow the lengthy arguments of

PEOPLE *v.* HARRIS. **359**

Misc.] Court of General Sessions, New York County, November, 1911.

the defendants and the prosecution for and against this proposition, nor shall I add another to the many unsuccessful attempts to define police power. A well-recognized function of the police power, however, extends to the protection of the lives, health and quiet of all persons. Of course its regulations must be reasonable in relation to the subject to which they are applied. The courts have frequently said that the mere fact that legislation is harsh and that hard cases might arise under the law affords no ground for declaring it invalid. Here the end in view is the protection of factory employees, and it is not a harsh or unreasonable provision of law which requires that owners of a factory shall keep the doors thereto unlocked during working hours; nor is the enforcement of such a law any invasion of constitutional rights.

Defendants also claim as a ground of demurrer that the provisions of section 80 of the Labor Law do not require that all doors to a factory should be kept unlocked during working hours; that section 80 does not mean that every door shall be unlocked, but that it is a sufficient compliance with the law if one door be not locked, bolted or fastened. It will be remembered that section 80 in this particular requires that " all doors leading in or to any such factory shall be so constructed as to open outwardly where practicable, *and shall not be locked, bolted or fastened during working hours."* Because the first clause of this sentence begins with the words " all doors " and the second clause reads " shall not be locked," etc., the defendants construe the act to mean that all doors shall not be locked, and that if one be unlocked it is a sufficient compliance with the act. I do not believe that the intention of the Legislature can be hidden under such a construction. Following the analytic argument of the defendants, the second clause in its relation to the first simply implies the subject, and a simple relative for the second clause makes it *they* shall not be locked. Whatever the grammatical construction of the act, it is certain that the Legislature did not intend to leave to the owner the choice of locking certain doors and leaving certain others unlocked. For the protection of employees the law has placed upon the employer an obligation to leave all doors leading to his factory unlocked

**360** People v. Harris.

Court of General Sessions, New York County, November, 1911. [Vol. 74.

during working hours. There is no question of the Legislature's intention when it declared that all doors shall open outwardly. A locked door opens neither inwardly nor outwardly. If any door leading to the factory was locked and bolted during working hours, the law was violated. The demurrer to this count is disallowed.

The third count charges the defendants with manslaughter in the first degree. It is based upon the alleged failure of the defendants to perform their duty with regard to the keeping of their factory in a safe condition for their employees, and upon a violation of the law which places particular obligations upon owners in the operation and control of factories. On the theory that the alleged non-performance of these duties and the violation of the law constitute a public nuisance which becomes a misdemeanor by the provisions of the Penal Law, it is alleged that the defendants, while engaged in the commission of a misdemeanor, caused the death of the decedent, and the defendants are therefore charged with manslaughter in the first degree. In support of the allegations which charge non-performance of duty, the count, in substance, sets forth that the defendants failed to provide adequate means to guard and protect their employees and laborers while in the said factory from injury by or from any fire which might occur therein, and failed to keep the said factory free from all unnecessary accumulation of inflammable and combustible material while laborers were within the factory.

It is charged specifically that the defendants did carelessly cause, suffer and permit great quantities of remnants and clippings of cloth, dirt, lint and rubbish to be and remain in the said factory, which materials, it is alleged, were of a highly inflammable and combustible nature, and that they permitted these and other materials to encumber and obstruct passageways to the doors of the factory, thereby affecting a large number of human beings, among whom was the decedent, whose life it is alleged was lost in the fire which occurred in the factory, and therefore the count charges that the defendants, in the manner and form and by the means aforesaid, did kill and slay the decedent.

Misc.]   Court of General Sessions, New York County, November, 1911.

As matter of law, employers are bound to furnish a reasonably safe place for their employees. The statutes having this object in view have made certain special provisions the violations of which constitute misdemeanors.

The statement that the materials mentioned are of a highly combustible and inflammable nature is a conclusion; while it may be susceptible of proof there is nothing in the count to show that they were the cause of the fire; in fact from all that the indictment reveals the origin of the fire is unknown. There is certainly nothing in the common law which makes a misdemeanor of the employer's failure to furnish his employees with a safe place and, while it may be a duty a failure to comply with which might constitute culpable negligence, there is nothing in the statute which makes this particular violation of duty a misdemeanor, nor does it come within the statutory definition of a public nuisance.

If the validity of this count rested wholly upon these allegations the count would fail, but there is in this count the other charge that the defendants failed to keep unlocked, unbolted and unfastened a certain door in the factory. For their failure in this regard the defendants are charged with maintaining a public nuisance which constitutes a misdemeanor. The generally accepted idea of a public nuisance is one which has come down to us through the common law. While the commonly accepted theory of a public nuisance has been that it affected the community at large, it was nevertheless a nuisance if it affected any considerable portion of a community. There appears always to have been the idea of an offense, injury or annoyance to the public in public places or the invasion of a right which the community at large might exercise if it saw fit to do so. Manufacturing establishments have been prolific of public nuisances, such as offensive odors, noxious gases, disturbing noises, smoke, cinders and fire which disturbed repose and comfort or menaced health or rendered life insecure to any considerable number of persons in the community.

A careful examination of authorities fails to disclose a case in which the owner of such a place was held for maintaining " a public nuisance " because of the injury which it

worked upon the laborers and employees at the source of the annoyance and within the confines of the factory. But the common law in its progress has been applied to new conditions as they presented themselves. It is not an inflexible instrument which will not bend to correct a wrong because precedent is lacking.

In the manufacturing establishments of the present time there are frequently more human beings engaged than there are inhabitants in the entire population of villages where the common law theory of " public nuisances " applies. Whether or no our penal statute which defines " public nuisances " is an extension of the common law doctrine of public nuisance, it seems to be in accord with the reason of that doctrine. In my opinion it covers the allegation in this count that the defendants kept locked and bolted a door in their factory during the hours of labor.

Section 1530 of the Penal Law defines a public nuisance as a crime against the order and economy of the State, and consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

" 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or * * *

" 4. *In any way* renders a considerable number of persons insecure in life."

In the varied relations of life there are countless omissions of duty which cannot be characterized as misdemeanors. Section 1530 refers to such duties as are directed by statute.

The keeping of a door locked, bolted and fastened in a factory during working hours is a violation of statutory law. If in that way the defendants rendered a considerable number of persons insecure in life, they maintained a public nuisance according to the terms of section 1530, which provides that a public nuisance consists in unlawfully doing an act which *in any way renders* a considerable number of persons insecure in life. The Penal Law provides that one who maintains a public nuisance is guilty of a misdemeanor. The allegations of this count charge that the defendants, while engaged in the commission of a misdemeanor, feloniously caused the death of the decedent.

The demurrer to the third count of the indictment is disallowed.

The fourth count of the indictment charges the defendants with manslaughter in the second degree. The allegations of this count are little else than general allegations of negligence and legal conclusions. They contain no statement of the facts and circumstances which constitute the offense with which the defendants are charged.

The demurrer to this count is allowed.

The fifth and sixth counts charge the defendants with manslaughter in the second degree. They set forth the alleged commission of unlawful acts by the defendants and their omission to perform certain duties, with the result that the defendants are charged with culpable negligence.

The counts further allege that by reason of the defendants' gross and culpable negligence the deceased was prevented from leaving the factory in safety when a fire broke out. It is further alleged that through the culpable negligence of the defendants the fire spread with great speed and violence through the factory and allegations are set forth to sustain these charges. Whether the decedent was burned to death through the culpable negligence of the defendants is a question of fact for the jury.

The demurrers to the fifth and sixth counts are disallowed.

The demurrers to the indictments and all the counts therein are disallowed, with the exception of the demurrers to the fourth count, which are allowed.