## SWAN v. SWAN.

(Supreme Court, Appellate Division, Second Department.   March 17, 1916.)

1. DIVORCE ⬤⟳129(1)—EVIDENCE—SUFFICIENCY.

    In an action by a husband for divorce, evidence *held* insufficient to sustain the findings of the referee that the wife was guilty of adultery.

    [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 499–504, 508; Dec. Dig. ⬤⟳129(1).]

2. DIVORCE ⬤⟳150(1)—REFERENCE—INSPECTION BY REFEREE—EFFECT.

    The opinion of the referee in divorce proceedings, after inspection of the premises, as to the possibility of a witness seeing what she testified to if the parties were in a position different from that stated by her, cannot be given probative force, since, at least in the absence of a record of what he saw, he must be deemed to have inspected the premises merely for a better understanding of the evidence.

    [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 499–504, 508; Dec. Dig. ⬤⟳150(1).]

Appeal from Special Term, Kings County.

Action for divorce by Halstead Swan against Florence Berry Swan. From an interlocutory judgment, confirming the report of the referee, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, STAPLETON, MILLS, and PUTNAM, JJ.

Herbert C. Smyth, of New York City (Roderic Wellman, of New York City, on the brief), for appellant.

I. R. Oeland, of New York City, for respondent.

Charles Stuart Guthrie, of New York City, for intervener.

THOMAS, J.   [1] Although the evidence has been examined industriously and extended discussion considered, it is deemed sufficient, in view of a probable retrial, to state the general grounds of the decision.   The finding of the offense under conditions favoring onlooking and with indifference to exposure depends essentially upon the testimony of Margaret Sullivan to the effect that near midnight she, standing without the door leading into the living room, in ample light saw the parties in adulterous intercourse on a couch located along the southerly side of the common sitting room.   The evidence preponderatingly shows that the couch was not in that position, but was on the easterly side of the room, in a place where the witness, standing where she said that she did, could not have seen what she said she did.   She does not pretend to have seen the act where the evidence shows that the couch was, and it is quite impossible to furnish her credit by assuming that she could have seen the act where, by her story, it did not take place, especially as even there she could not have seen it.

[2] The court may not lend probative force to the suggestion of the learned referee as to the possibility of Sullivan seeing the act on the east side of the room, because, at least in the absence of a record of what he saw and where he stood to look, he must be deemed to have examined the premises merely for a better understanding of the

evidence, and not to give it verity. Claflin v. Meyer, 75 N. Y. 260, 267, 31 Am. Rep. 467. Moreover, even if it were possible to see the sofa on the easterly side, Sullivan says that she did not see it there, so that what she might have seen becomes irrelevant. The record discloses that the witness Sandberg left or was discharged from the service of defendant's sister by reason of her own disobedience, and there is evidence that Sullivan, discharged, or going of her own will, as the inference may be drawn, had excited some displeasure. Although such persons received, and may in the main have merited, the conventional recommendation, the weakened good will with which they parted from the family and their later complaisant subjection to the oversight of the plaintiff, and their companionship with his attentive chauffeur, may well have begot or stimulated an indisposition towards the defendant. In that view, their statements evoke something of the distrust that may inhere in the testimony of discharged servants. The record discloses their tendency in some instances to give a sinister aspect to acts innocent, or at most conventionally improper. Sullivan's mistake as to the location of the sofa gives instability to her testimony, and her relation to the parties tended to qualify her for the recital that has proved unreliable.

The interlocutory judgment should be reversed, and a new trial granted; costs to appellant to abide the event. All concur.