TEXTILE ALLIANCE, INC., Respondent, *v.* P. H. KEAHON, INC., Appellant.

Supreme Court, Appellate Term, First Department, June 29, 1925.

Carriers — action for damage arising from breaking container holding dyes in transit from dock to bonded warehouse — defendant corporation has exclusive trucking contract with Federal government for carrying merchandise from steamship docks — plaintiff subsequently paid defendant trucking charges as part of general cost of entry — defendant in performing public duty without discrimination is common carrier for hire and is liable for damages occasioned by accident.

Defendant, a trucking corporation, having an exclusive trucking contract with the Federal government to carry merchandise from steamship docks, is liable to the plaintiff as an insurer for the damages occasioned by the breaking of a container holding dyes in transit from a dock to a bonded warehouse, where it appears that though the plaintiff had designated its own bonded warehouse as the place of delivery of said merchandise, it was compelled to select the defendant carrier by reason of the rules and regulations of the customs department and subsequently paid the trucking charges advanced by the Federal government as part of the general cost of entry, since the defendant in performing a public duty toward the plaintiff, and without discrimination, was a common carrier for hire.

APPEAL by defendant from a judgment of the Municipal Court, Borough of Manhattan, Ninth District, rendered in favor of plaintiff for the sum of $913.62.

*Sutta & Frankel* [*Nathan Frankel* of counsel], for the appellant.

*Coudert Brothers* [*Howard Thayer Kingsbury* and *Frederick R. Coudert, Jr.*, of counsel], for the respondent.

LEVY, J.:

In this action the plaintiff, an importer of dyes, recovered a judgment against the defendant, who is engaged in the trucking business under a contract with the United States government. While such dyes belonging to the plaintiff were being carried by

the defendant upon one of its trucks from the steamship dock to a bonded warehouse designated by the former, one of the containers was broken in transit and the dye was spilled on the street. The driver swept it up with the street litter and placed it in bags. This admixture of dirt rendered the merchandise wholly useless for its purpose and without any salvage value, and the plaintiff has, therefore, recovered the full amount of its claimed damage.

The main question in the case hinges upon whether the defendant was a common carrier. If so, it was liable to the plaintiff as an insurer for the damage due to the accident while the merchandise was in its custody in the course of transportation. To determine this we must examine the circumstances under which the defendant assumed charge of the goods and the practice with regard to such shipments as they enter the port of New York. The defendant has a contract with the United States government for the exclusive carrying of merchandise from the steamship docks to the appraisers' stores, to general orders and special general orders. When goods are sent to the appraisers' stores for the purpose of determining the customs duties, the government pays the contractual charges. Goods are sent to special general orders by reason of the fact that the importer's documents are not complete, but the government allows him to designate a particular bonded warehouse to which his goods are to be sent pending the arrival of the full documents. The charge for this haulage is fixed by contract between the United States government and the defendant. But when the goods are finally entered, the importer reimburses the government for the trucking charge. The rate fixed in the contract for such haulage is previously determined by a committee consisting of the Chamber of Commerce of New York, the Collector of the Port and other bodies. While the goods are in special general orders, as in the other two groups, they are under the control of the government, subject, however, to the ownership rights of others and the proper payment of duties, etc. It is probably for this reason that the government assumes a monopoly over the transportation of such goods by giving the exclusive trucking rights to one concern under contract.

Here the plaintiff's property had been sent to special general orders. It had designated its own bonded warehouse as the place of delivery. It had no choice as to the truckman, being compelled to select the one designated by the United States, but it subsequently paid the trucking charges to the government as a part of the general cost of entry. Was the defendant under these circumstances a common carrier for hire? It was certainly performing

a public duty toward the importer, without discrimination. True enough, it was hired by the United States government, but this hiring was for the account of the importer who subsequently paid the charges advanced. Under these circumstances, it is difficult to distinguish the work performed by such carrier from the work performed by a railroad between two points along which there is no competing line. Such a transit line is a carrier with a monopoly of rail transportation between the two given points; except that in the case of the railroad the hiring is by the shipper direct and not by an agency which has the hiring right for the account of the former. This distinction is not sufficiently decisive to take the defendant out of the class of common carrier. Unless, therefore, we are bound by previous decisions of the courts which are alleged to be determinative of the defendant's status as bailee and not as common carrier, we must affirm the judgment.

The defendant urges that the case of *Thompson* v. *Keahon, Inc.* (120 Misc. 70), an action against this very defendant, determines its status as a bailee and not as a common carrier. A reading of the facts in that case will show that there was no such determination. There the defendant was transporting goods from the steamship dock to the appraisers' stores under the direction of the government. It did not receive, nor was it entitled to any compensation from the importer, nor was the government entitled to reimbursement for this particular service from such importer. Consequently, the question arose whether the defendant was merely a gratuitous bailee, so far as the importer was concerned, or an ordinary bailee. This court in the light of those facts held that it was an ordinary bailee. But the service rendered by the defendant in transporting to the appraisers' stores is clearly a different type of service from transportation of special general order merchandise to a warehouse designated by the importer, the charge for the cartage of which the latter ultimately pays.

A situation similar to the one in the *Thompson* case was involved in *United States ex rel. Matthews* v. *Massachusetts Bonding & Insurance Co.* (207 App. Div. 619). In that case the importer, whose goods were damaged while in possession of the defendant trucking company, tried to hold the surety which had guaranteed to the government the performance of the trucking company's duty. The trial court charged that the defendant was not a common carrier. While the Appellate Division did not pass upon this point, it did, however, in its opinion define the duty of the defendant as coextensive with the liability of a common carrier: " Every reason, however, making it incumbent upon a connecting carrier or a common carrier to explain a loss under facts and circumstances

establishing that a shipment was in proper condition when the initial carrier received it, applies to the Keahon corporation here." It is not necessary, however, to rest upon this expression in the last cited case, which, it should be mentioned, was reversed in the Court of Appeals (238 N. Y. 334) on grounds unconnected with this question. Even granting that the trial court was correct in its charge that the defendant was not a common carrier, its instruction in that regard was limited to the particular service the defendant was rendering in that situation. It was the identical service it performed in the *Thompson* case, namely, carrying from the dock to the appraisers' stores, a service which, so far as the importer was concerned, was apparently gratuitous.

It follows from the foregoing analysis that the defendant is in error in assuming that the courts have fixed its status as that of an ordinary bailee, and, therefore, that it is liable only in the event of its negligence. (*Claflin* v. *Meyer*, 75 N. Y. 260; *Stewart* v. *Stone*, 127 id. 500.) Here the service was clearly that of a common carrier for hire; and in view of this it is unnecessary to determine the second question, as to whether the defendant was negligent. Moreover, I can find absolutely nothing in principle which distinguishes this situation from those considered in a number of cases before the Court of Appeals, as for example, *Jackson A. Iron Works* v. *Hurlbut* (158 N. Y. 34). In that case (at p. 37) Judge O'BRIEN took occasion to say: " Truckmen, wagoners, cartmen and porters who undertake to carry goods for hire as a common employment in a city or from one town to another, are common carriers." Just why the large class of merchants doing an importing business, which reflects no small part of the commerce of the nation, should not have that same measure of protection which is assured to the public generally is entirely beyond me.

Judgment affirmed, with twenty-five dollars costs.

All concur; present, BIJUR, McGOLDRICK and LEVY, JJ.